## COHEN v. KELM.
### Civ. No. 4007.

United States District Court,
D. Minnesota, Fourth Division.
Dec. 2, 1953.

Sheldon D. Karlins (of Sachs, Karlins, Grossman & Karlins), Minneapolis, Minn., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., and Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to Atty. Gen., all of Washington, D. C., and George E. MacKinnon, United States Attorney, and Alex Dim, Asst. U. S. Atty., both of St. Paul, Minn., for defendant.

NORDBYE, Chief Judge.

Two questions are presented: (1) Is a sole proprietorship of a business, such as a retail store, a capital asset so that a gain on its sale is a capital gain; and (2) if such a sole proprietorship is not a capital asset, how is it determined what part of the purchase price is attributable to good-will, good-will being a capital asset?

Cohen, the taxpayer, operated a retail clothing store at Ladysmith, Wisconsin, for some 23 years until March 16, 1946, when he sold the business to one I. Blustin. No complete inventory was made immediately prior to the sale, but Blustin, who was an experienced buyer of such merchandise, made a visual inspection of the inventory and, after some negotiations, the parties agreed to a sale price of $112,000. The bill of sale transferred "all the goods, wares, merchandise and fixtures" of Cohen's clothing establishment, but the bill of sale contained no mention of good-will and made no allocation of the purchase price to the various assets of the business. It is conceded that the transfer did not pertain to any leasehold rights in the premises.

Cohen handled nationally advertised brands of shoes and clothing; he drew trade from a wide area since he specialized in extra-large and extra-small sizes not commonly carried by his competitors. That he enjoyed success in the operation of his clothing business is evidenced by the fact that in the five years preceding 1946 his average net earnings before taxes from his clothing store were $38,514.82 annually, and in 1945 his net earnings were $81,556.99. After Blustin purchased the store, he operated the clothing establishment under the name of Louis Cohen and retained as manager the man who had managed the store for Cohen. The evidence indicates that Blustin lost some $1,554.67 from the operation of the clothing store during his first year of business, but this may be in part explained by the fact that he employed inexperienced help, and moreover, the evidence does not disclose what part, if any, of the $112,000 purchase price Blustin allocated to good-will. Obviously, if he allocated the entire purchase price to the stock on hand, such allocation may, in part at least, explain the loss during his first year of business.

In computing his 1946 income tax, Cohen reported the profit from the sale of his business as a capital gain, and accordingly included fifty per cent of such amount in gross income. He rationalized that, as to the difference between the selling price and the basis of the property sold, an amount of $35,736.38 represented the value of the good-will sold to Blustin. In September, 1949, the revenue agent in charge adjusted Cohen's return, allowing $12,000 of the gain as a capital gain from the sale of good-will and property used in the business, while

attributing the balance to ordinary gain as a gain on the sale of the inventory. As a result thereof, a deficiency assessment of $8,021.32, plus interest, was assessed. Cohen paid the deficiency, and this action ensued to recover the amount paid.

■ The decisions on the question as to whether the sale of a business as a going concern is a capital asset are comparatively few, and it may be recognized that there is no clearly defined weight of authority on the point. However, the Court concludes that Williams v. McGowan, 2 Cir., 1945, 152 F.2d 570, 162 A.L.R. 1036, should be followed rather than Hatch's Estate v. C. I. R., 9 Cir., 198 F. 2d 26. It is also significant that the Supreme Court indicated its approval of the Williams case in Watson v. Commissioner, 1953, 345 U.S. 544, 552, 73 S.Ct. 848, 853, 97 L.Ed. 1232. There, the question was, Is the gain from the sale of an orange grove, including an unmatured crop then on the trees, a capital or an ordinary gain? In holding that the seller must treat that part of her profit from the sale which was attributable to the unmatured crop as income and not as a capital gain, the court stated that its holding was "consistent with the policy evidenced in Williams v. McGowan, 2 Cir., 152 F.2d 570, 572, 162 A.L.R. 1036, which established in the Second Circuit, in 1945, the doctrine that 'upon the sale of a going business it (the sales price) is to be comminuted into its fragments, and these are to be separately matched against the definition in § 117 (a) (1) [26 U.S.C.A. § 117(a) (1)] * * *.' "

■ The question is then presented whether the taxpayer has sustained the burden of proving that the Collector's determination of the amount of the purchase price to be allocated to good-will is erroneous. Helvering v. Taylor, 293 U. S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L. Ed. 848; Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. It is recognized that where the entire business is sold as a going concern, good-will is transferred although the bill of sale does not mention good-will. Pfleghar Hardware Specialty Co. v. Blair, 2 Cir., 1929, 30 F.2d 614. But in the sale of such a business as involved herein, the taxpayer must show not only each asset's basis, but also what portion of the selling price is fairly attributable to each asset. Here, however, there is no dispute as to the bases of the assets. The parties recognize that the property, that is, the fixtures, etc., used in the business was for tax purposes almost wholly depreciated, and hence has no bearing upon the evaluation of good-will and the inventory. The dispute, therefore, in this case pertains to what portion of the sales price is to be attributed to inventory and what portion to good-will. The parties have stipulated that the beginning inventory of January 1, 1946, which totals $75,972 is to be considered as the cost basis of the inventory which was transferred on March 16, 1946. Consequently, we commence with the premise that the reasonable cost to Cohen of the merchandise sold to Blustin in March, 1946, was the sum of $75,-972. And it is significant that at the time of the sale, the merchandise was subject to an OPA maximum limiting the price of the sale of the merchandise at retail. As stated, Blustin was an experienced buyer of such merchandise and while he made only a cursory examination of the inventory before the sale was consummated, no good reason is forthcoming why he should over-pay, by some fifty per cent, the cost of the merchandise on hand, especially when he was limited to certain maximum retail prices in disposing of this merchandise to his customers. The Government made no attempt to evaluate the inventory in arriving at a figure for good-will. It does appear that the revenue agent talked to Blustin, the purchaser, who by the way is now dead, and did learn from Blustin that the latter merely concluded that he had paid $112,000 for the inventory and the property in the business. The reve-

nue agent also conferred with Mr. Karlins, attorney for Cohen, and while it is not contended that such negotiations were binding in any way upon the taxpayer, it does appear that the figure of $12,000 was arrived at by the agent after such conference. The difficulty, however, with the Government's position with reference to the evaluation of goodwill is that it merely selected this figure arbitrarily, without attempting to determine what the reasonable market value of the merchandise was at the time of the transfer. That is, the Government concluded that $12,000 would be a reasonable figure to allow for good-will, and then, without further data to support its position, deducted that sum from the purchase price and concluded that the balance represented the reasonable market value of the inventory. Certainly, it is far more reasonable and consistent with the admitted facts to conclude that the cost basis of the inventory as of March, 1946, represented the market value of the merchandise sold. It is wholly unpersuasive under the circumstances to conclude that a purchaser would pay for a mixed lot of merchandise a price substantially over its cost, especially since OPA regulations limited the price at which such merchandise could be sold at retail. The more convincing explanation for the difference between the cost of the merchandise of $75,972 and the selling price of $112,000 is the existence of that intangible asset which would inure to Blustin in stepping into a going concern with an established reputation and an established line of customers. While the record is not too satisfactory for the evaluation of goodwill, it does seem clear that the Government's figure of $12,000 is wholly arbitrary and an unrational figure, without any sound support in the record. It is far more reasonable to conclude that the part of the purchase price remaining after deducting the cost of the merchandise represented the amount paid for the intangible asset of good-will.

█ The taxpayer does proceed to compute the value of the good-will on the basis of a formula known as A.R.M. 34 [2 Cum.Bull. 31 (1920)], but it may be doubted that the use of such formula is of any real assistance in determining this controversy. It may be observed that, by the use of this formula, good-will is valued at $205,364.60, which is an amount in excess of five times the amount sought to be allocated to good-will. But without reference to the results obtained by the application of the formula, it does appear that the taxpayer has fairly sustained the burden of proof in establishing that the revenue agent's figure is wholly arbitrary and devoid of any sound basis in the record. And while, as stated, the entire record may be said to be somewhat scanty as to any satisfactory basis for the computation of the value of good-will in connection with this sale, it is far more reasonable and far more consistent with the facts to accept the taxpayer's computation than that advocated by the Government. Both parties recognize that there was substantial good-will in connection with this business, and this must necessarily be so in view of the length of time Cohen was in business, his earnings, the type of merchandise he handled, the area from which he drew his trade, and the fact that Blustin was permitted to continue in Cohen's name after he purchased the store. All these circumstances demonstrate that it is quite inconceivable that an experienced buyer like Blustin would pay for the inventory, as the Government contends, a sum far in excess of the cost of the merchandise. The more rational explanation for the $112,000 sale price is that the difference between the cost of the merchandise and the sale price was that intangible asset which was necessarily conveyed to Blustin, and which in light of all the facts and circumstances would have a value far in excess of $12,000.

█ The Court concludes, therefore, that the $75,972 should be allocated to the inventory and that $35,736.38 was a capital gain on the sale of the good-will, and as the good-will had a zero basis, one-half is cognizable as the taxpayer's

income. An adjustment of plaintiff's return should be made accordingly.

Findings of fact and conclusions of law consistent herewith may be presented upon ten days' notice.

An exception is reserved.