Isidore BROWN and Gladys J. Brown

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 11242.

United States Court of Appeals, Seventh Circuit.

March 2, 1955.

Albert Langeluttig, Chicago, Ill., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Morton K. Rothschild, Washington, D. C.,

Ellis N. Slack, Robert N. Anderson, Louise Foster, Sp. Assts. to the Atty. Gen., for respondent.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States, sustaining deficiencies in the income taxes of petitioner, Gladys J. Brown, for the years 1948 and 1949, respectively. 22 T.C. 147. Petitioners Isidore Brown and Gladys J. Brown, husband and wife, filed joint returns for those years, hence are joined as petitioners. This controversy, however, relates only to the asserted income of Gladys J. Brown, who will subsequently be referred to as the taxpayer.

Taxpayer was, from October 24, 1945, to September 30, 1950, the sole owner of a business building located at 2800 Milwaukee Avenue, Chicago, Illinois. On July 20, 1946, she leased the first and second floors and part of the basement of said property to Morris B. Sachs, Inc., for a term of ten years and four months. The question for decision depends upon the effect to be given the provisions of the lease as they fix and determine the rental rights and obligations of the lessor and lessee.

The lease is lengthy (occupies some twenty-five pages of the printed record), which taxpayer urges should be considered as a whole in determining the rights and obligations of the parties. Taxpayer, however, suggests no provision which has any bearing upon the issue for decision other than those pertaining to rentals and improvements. Moreover, a reading of the lease is convincing that they alone are material; hence, our discussion will be limited accordingly.

A decision of the issue in dispute depends upon the effect to be given provisions contained in Section 22(a) and (b). For a better understanding of those provisions, however, it appears pertinent to note that the lease provided for a fixed rental of $40,000 per year, plus a percentage rental based upon gross sales made by the lessee. (A formula was provided for the ascertainment of the percentage rental which need not be set forth because there is no dispute as to the amount of percentage rental during the tax years in question.) The lessee was authorized under its exclusive control and supervision, to alter and remodel the premises demised. Section 22 of the lease provides, so far as material, as follows:

"Lessor agrees to contribute towards the remodeling, altering and air-conditioning the sum of Sixty-Five Thousand Dollars ($65,000.00), to be paid and/or credited by the Lessor, as follows:

"(a) Thirty-Two Thousand Five Hundred Dollars ($32,500.00) shall be paid by the Lessor as such remodeling, altering and air-conditioning progresses, to Lessee's general or sub-contractors * * *.

"(b) Thirty-Two Thousand Five Hundred Dollars ($32,500.00) to be credited to the Lessee from the rental due and owing by it under this Lease, if and after the Lessor has received a minimum of Fifty Thousand Dollars ($50.000.00) as rent for the demised premises in any one year of the tenancy herein created, and until such deductions aggregate Thirty-Two Thousand Five Hundred Dollars ($32,500.00). * * *"

Section 23 provides that in the event the cost of the improvements "exceeds the sum of Sixty-Five Thousand Dollars ($65,000), such excess is to be paid and borne exclusively by Lessee," and if it costs less than $65,000, "the Lessor shall be required to pay only the actual cost thereof and the credits provided in 22(b) hereof shall abate accordingly." Section 24 provides that all work of "a nonpermanent character is to be paid for by the tenant and is not to be included in said sum of Sixty-Five Thousand Dollars ($65,000.00) herein allowed by Lessor to Lessee for remodeling, repairing and air-conditioning."

In summary, lessor assumed an obligation to expend $65,000 for the remodeling of the demised premises, one-half of which was to be paid directly by her, which obligation was discharged and is not here involved. The other one-half was conditioned upon the requirements contained in Section 22(b). Such requirements were met and what had theretofore been a conditional obligation of the lessor became fixed and was discharged in the manner provided in Section 22(b), that is, by a credit to the lessee "from the rental due and owing by it under this lease."

As shown by the stipulated facts, the total rental for the year 1948 was $70,528.72 of which $40,000 was the fixed and $30,528.72, the percentage. For the year 1949, the total was $62,318.13, of which $40,000 was the fixed and $22,318.13, the percentage. Under paragraph (b), the taxpayer was entitled to and did receive a minimum rental of $50,000 each year. (This included the $40,000 fixed and $10,000 from the percentage rental.) After such payments, there remained in the hands of the lessee, of the percentage rental, the sum of $20,528.72 for the year 1948, and $12,318.13 for the year 1949, which amounts under paragraph (b) were "due and owing" to the taxpayer but which by the terms of the lease the lessee was entitled to pay on improvements and take credit therefor. The lessee took credit for $20,528.72 in the year 1948, and $11,971.28 in the year 1949. The cost of improvements was $79,372.53, $32,500 of which was paid directly by the lessor in accordance with the provisions of paragraph (a). The lessee received credit for rental due the taxpayer in a like amount during the years 1948 and 1949. The balance of the cost of improvements, that is, the sum of $14,372.53, was under the terms of the lease the debt of the lessee, which it paid. The net result flowing from paragraph (b) is aptly stated in the stipulation as follows:

"With respect to said $32,500 credited to Morris B. Sachs, Inc., $20,528.72 thereof was credited on total rental of $70,528.72 for 1948 thereby reducing the cash payment of rental by $20,528.72, and $11,971.28 thereof was credited on total rental of $62,318.13 for 1949 thereby reducing the cash payment of rental by $11,971.28."

Taxpayer employed the cash basis method for reporting income for the years 1948 and 1949. She reported as income $50,000 for the year 1948 ($40,000 fixed plus $10,000 percentage rental), and she reported as income $50,346.85 for the year 1949 ($40,000 fixed plus $10,346.85 percentage rental). She did not report the amounts of $20,528.72 and $11,971.28 for the years 1948 and 1949, respectively. (As shown these amounts were, as provided in paragraph (b), "credited to the lessee from the rental due and owing by it" under the lease.)

The question for decision is whether such amounts represented income to the taxpayer. She contends that they did not inasmuch as they were not received by her. On the other hand, the Commissioner contends, supported by the decision of the Tax Court, that such amounts constituted income of the taxpayer. It was upon this basis that the deficiencies in question were asserted.

The Tax Court in its opinion stated:

"Much of the difficulty in this case is attributable to petitioner's insistence that the question is not whether the $32,500 credited pursuant to paragraph 22(b) of the lease is income, but when it is income. If that item was income at all $20,528.72 thereof was realized in 1948, and $11,971.28 in 1949, when these amounts were effectively applied to extinguish petitioner's liability to the lessee. Certainly, there could be no later year in which these amounts might be treated as income, and petitioner has suggested no other time when they might be taken into account. She realized income to the extent of $20,528.72 and $11,971.28 in 1948 and 1949, respectively, by reason of the application of rent towards the discharge of her

liability under paragraph 22(b) of the lease."

Taxpayer in her brief characterizes the above statement as "the nub of this case" and asserts, "If the Tax Court is wrong in this statement, then it appears that its decision is vitiated." It is argued here as it was before the Tax Court that the question is not "whether all income received by the taxpayer shall be taxed but when it shall be taxed." We agree with the Tax Court not only that the amounts in controversy were income realized by the taxpayer in the years 1948 and 1949, but that they could not have been properly treated by her as income for any succeeding year.

It appears to be the theory of the taxpayer that Section 22(b) is to be given no effect taxwise because the rights and obligations of the taxpayer as well as those of the lessee were conditional. Referring to this paragraph, taxpayer in her brief states that it was applicable only if

"(a) The lessee made improvements in excess of $32,500.

"(b) If those improvements cost as much as $32,500 more than the $32,500 paid under 22(a).

"(c) If the rental calculated under the percentage clauses of the lease exceeded $50,000.

"(d) If during the whole ten years of the lease enough years occurred in which the rent exceeded $50,000 under the percentage clauses of the lease.

"(e) If such excess under the percentage clauses of the lease during the ten year period equalled $32,-500."

It is true, of course, that the contingencies thus stated might not have occurred during 1948 and 1949, but the fact is that they did. We are now concerned with realities, that is, what did happen rather than what might or might not have happened in the application of 22(b). It would be just as logical to argue that the taxpayer was not chargeable with income actually received from percentage rental because it could not be determined in advance whether there would be such rental and, if so, how much. The lessor and lessee agreed to a formula by which the rights and obligations of each became fixed and definite during the taxable years.

We think that by the clear unambiguous language of the lease the taxpayer assumed an obligation to contribute $65,-000 toward the cost of improvements. It is true, as heretofore noted, that half of this obligation was conditional but when those conditions were met, as they were, this part of the obligation became definite and certain. And under the express language of the lease the amounts which were paid by the lessee (those upon which the deficiency has been assessed) were in discharge of the lessor's obligation. They were, in the language of the lease, "credited to the Lessee from the rental due and owing by it under this Lease." Further, the lease negatives any idea that the amounts in controversy were paid or considered as obligations of the lessee. The lessee's obligation was expressly limited to an amount spent in excess of $65,000 for permanent improvements and the cost of non-permanent improvements.

 Under a variety of circumstances it has been held that income may be realized even though it is not received by the taxpayer. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Old Colony Trust Company v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3; United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018; United States v. Joliet & Chicago Railroad Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658. True, these cases and no other of which we are aware have considered a factual situation such as is here presented. They are pertinent, however, because of the reasoning and general principle announced.

Taxpayer places much reliance upon M. E. Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 186, 83 L.Ed. 167, and Wine v. Commissioner, 7 Cir., 87 F.2d

**16**

161. In fact, it is asserted that the latter case, a decision by this court, is a direct precedent in favor of the taxpayer's contention here. A study of these cases reveals that while the decisions were favorable to the taxpayers there involved, they are clearly distinguishable because of the wide variance in the factual situation. In the Blatt case, as stated by the court, 305 U.S. 186, page 275, 59 S.Ct. at page 188, the lessor (taxpayer) made a contract with a builder to make improvements upon the demised premises and agreed to pay up to a specified limit, with a provision in the lease that any additional work ordered by the lessee was to be paid for by it. It was the cost of this additional work which the Commissioner sought to include in the income of the lessor on the theory that the cost of such improvements resulted in the realization of gain by the lessor and that it therefore constituted income. The court among other things stated, 305 U.S. at page 276, 59 S.Ct. at page 189:

> "We are not called on to decide whether under any lease or in any circumstances, income is received by lessor by reason of improvements made by lessee * * *."

And again on the following page:

> "Even when required, improvements by lessee will not be deemed rent unless intention that they shall be is plainly disclosed."

█ In the instant case, as shown, the parties by the express language of their lease characterized the payments in controversy as rent "to be credited to the Lessee from the rental due and owing by it under this lease." Taxpayer contends that the payments by the lessee here involved do not come within the definition of rent as set forth in the Blatt opinion as follows:

> "Rent is 'a fixed sum, or property amounting to a fixed sum, to be paid at stated times for the use of property * * *; it does not include payments, uncertain both as to amount and time, made for the cost of improvements * * *.'"

Again, it is the difference in the factual situation which dissipates any benefit which taxpayer might otherwise receive from this rental definition. It is obvious, of course, that the payments made by the lessee from rental otherwise due and owing the taxpayer, as well as all percentage rental, were uncertain at the time of the execution of the lease. There was provided, however, a formula by which such amounts became definite and certain during the taxable years.

█ Neither do we think that the Wine case furnishes any support to taxpayer's contention. There, the lessor (taxpayer), pursuant to a previous agreement, turned back to the lessee the equivalent of one year's rent. The net result of the transaction was that the taxpayer received nothing and realized no economic gain from the transaction. Under the peculiar circumstances involved, this court held that the transaction amounted to nothing more than an abatement of rent and sustained the position of the taxpayer. The clear and plain provision relative to rental in the instant case, however, removes any basis for the argument that the amounts in question should be treated as an abatement of rent.

█ Another facet of taxpayer's contention is that the improvements made by the lessee were entirely for its benefit and that she received no economic gain. It is pointed out that the evidence shows that the improvements will have no residual value to the lessor at the termination of the lease. Assuming that such is the situation, it does not follow, in our view, that no economic gain inured to the taxpayer, and it would appear that the cost of the improvements was for the mutual benefit of the parties. Undoubtedly lessee's business judgment dictated that the improvements were essential to the success of its business venture. The better it was equipped to serve the public, the more customers it could expect, with a resultant increase in the volume of its business. This was also of vital concern to the taxpayer because the amount of taxpayer's percentage rental depended upon the volume of business done by the

lessee. And it is reasonable to think that the same economic motive which moved the taxpayer to contribute $32,500 under clause 22(a) of the lease, induced her to assume a further liability in the same amount under 22(b), to be paid from the percentage rental when it reached a certain amount. As shown, the contingencies were all met during the taxable years in question and the amounts in dispute were paid by the lessee from rent "due and owing" to the taxpayer, which in the absence of agreement would have been paid directly to her, as was other percentage rental to which she was entitled under the terms of the lease.

In conclusion, it is perhaps of some pertinency to note that the lessee in its income tax returns for the years in question treated the amounts in dispute as rent paid by it to the taxpayer, as it did other rentals paid directly to her. We think that lessee, under the terms of the lease, was entitled to so treat such payments. By the same token, such payments were properly charged to the taxpayer as income.

The decision of the Tax Court is Affirmed.