James M. TUNNELL, Jr., and Mildred
S. Tunnell, Plaintiffs,

v.

The UNITED STATES of America,
Defendant.

Civ. A. No. 1809.

United States District Court
D. Delaware.

Feb. 4, 1957.

James M. Tunnell, Jr., Wilmington,
Del., in pro. per. and for Mildred S. Tunnell, plaintiffs.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., and Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, George T. Rita and Robert E. Manuel, Attys., Dept. of Justice, Washington, D. C., for defendant.

LEAHY, Chief Judge.

1. In 1951 plaintiffs' tax on income totaled $22,534.66. One item represented the sale, on June 6, 1951, of a 50% partnership interest by James M. Tunnell, Jr., in the law firm of Tunnell and Tunnell.[1] The amount received was $27,500 less $3,307.13, the adjusted basis of fixed assets, or $24,192.87. The tax was computed and paid at the rates applicable to ordinary income.

On March 7, 1955, pursuant to 26 U.S.C. § 7422, plaintiffs filed with the Treasury Department a "claim for refund" in the amount of $7,297.28. Plaintiffs contended the item of partnership interest should have been treated as capital gain, in which case the computed tax payable would have been $15,237.38.

Defendant rejected plaintiffs' claim on March 28, 1956. On April 11, 1956, plaintiffs brought suit here under the provisions of 28 U.S.C. § 1346(a) (1) for the sum of $7,297.28 plus legal interest from March 15, 1952. Both plaintiffs and defendant have moved for summary judgment. The Internal Revenue Code of 1939 is applicable.

The Government argues to the extent the sale of plaintiff's partnership interest reflected his interest in accounts receivable, computed as 50% of $21,833.51, or $10,916.76, it was a distributive share of partnership earnings and taxable as ordinary income. The remainder, $13,276.11, if treated as a capital gain, entitled plaintiffs to a refund of $4,481.83 plus legal interest.

Plaintiff admits on the date of sale of his partnership interest the accounts receivable of the partnership totaled $21,833.51.[2] However, plaintiff says, and the Government admits, plaintiffs' and partnership income tax returns were filed on a cash receipts and cash disbursements basis of accounting for taxable income and deductions, which had been accepted by the Treasury Department; and plaintiffs' and partnership income tax returns were on a calendar year basis.[3] Plaintiff argues since there was no net income realized from these receivables, he owned no distributive share on the date of the sale.

The present issue never has been presented in either this District or Circuit, nor is there any provision in the 1939 Code expressly relating to it. The Government relies upon 26 U.S.C. § 182, which states, in part: "In computing the net income of each partner, he shall include, whether or not distribution is made to him— * * * (c) His distributive share of the ordinary net income * * * of the partnership, computed as provided in section 183(b)." Section 183 (b) (2) (A) computes ordinary net income as the excess of gross income over deductions. Plaintiff would apply 26 U.S.C. § 117(a) (1), which defines capital assets as "property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

"(B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), or real property used in his trade or business;

"(C) a copyright; a literary, musical, or artistic composition; or similar property; held by—

"(i) a taxpayer, whose personal efforts created such property, or

"(ii) a taxpayer in whose hands the

---

1. The Agreement of Dissolution, paragraph 3, disposed of "any right, title or interest * * * in the said law firm, its good will, its furniture, fixtures, equipment, library, bank account, book accounts, and claims for any services which had been rendered prior to June 7, 1951, but which had not yet progressed far enough to justify a billing or for any reason had not yet become a 'book account'."

2. Plaintiffs' answer to defendant's request for admissions of fact.

3. Defendant's answer to plaintiffs' request for admissions of fact.

basis of such property is determined, for the purpose of determining gain from a sale or exchange, in whole or in part by reference to the basis of such property in the hands of the person whose personal efforts created such property; or

"(D) an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue."

2. Earlier the Bureau of Internal Revenue treated the sale of a partnership interest as the sale of the selling partner's undivided interest in each specific partnership asset.[4] Later in 1950 the Bureau, conceding this was contrary to the overwhelming weight of authority, issued a special ruling. It declared a transaction which, in substance, rather than form and appearance, was essentially the sale of a partnership interest should be treated as the sale of a capital asset.[5]

The sale of a partnership interest is to be distinguished from the sale of a business as a going concern. The legal consequences of this distinction have evoked considerable recent comment. In Williams v. McGowan, 2 Cir., 152 F.2d 570, 162 A.L.R. 1036, the surviving partner purchased the deceased partner's interest in a hardware business and then sold the entire business to a third party. The Court (Learned Hand, J.) held the sale price of a business as a going concern was to be comminuted into its fragments, and these were to be separately matched against the definition in § 117 (a) (1). But, in Hatch's Estate v. Commissioner, 9 Cir., 198 F.2d 26, the Court disagreed. Partners in an automobile agency sold their interests in the business to a third party, with the bill of sale, an appendage to the agreement of sale, setting forth the specific items of property transferred. The Court refused to follow the ratio of the Second Circuit since the expressed intention of the taxpayers in selling the business as a going concern was not to sell individual assets but the business as a whole. The purpose of the inventory list was merely to enable the parties to adjust the tentative selling price to accord with the appraised allowance for the items in it. It was concluded what was sold was each partner's partnership interest, the sale of which constituted the sale of a capital asset giving rise to a capital gain.

In Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232, the Supreme Court chose to make an apt remark on this question. Taxpayer and each of her two brothers owned an undivided partnership interest in an orange grove and were engaged in the business of growing and selling the oranges it produced. During the 1944 growing season, the orange grove, including land, trees, an unmatured crop, improvements and equipment, was sold. Taxpayer sought to take full deductions for her share of crop cultivation expenses up to the time of the sale and, at the same time, treat the gain from the sale of the grove, including the unmatured crop, as a capital gain. The Court held (6 to 3) the Commissioner may segregate and charge as ordinary income so much of the gain which was fairly attributable to the presence of the unmatured crop at the time of sale.[6] Since the proceeds fairly attributable to the unmatured crop were derived from property held by the taxpayer primarily for sale to customers in the ordinary course of trade or business, taxpayer could not seek refuge under § 117 to secure capital gain treatment. The Court then served notice its decision

4. G.C.M. 10092.

5. G.C.M. 26379.

6. Subsequently in Smyth v. Cole, 9 Cir., 218 F.2d 667, the appellate court, in remanding, directed the trial court to make findings respecting the value, if any, fairly attributable to a crop of growing fruit on the sale date. As to the value of good will, taxable as a capital gain, see Cohen v. Kelm, D.C.Minn., 119 F. Supp. 376.

was consistent with the policy evidenced in Williams v. McGowan.[7]

3. Plaintiff heavily relies upon Swiren v. Commissioner, 7 Cir., 183 F.2d 656, a situation similar to the case at bar. There an attorney sold his accounts receivable and potential accounts for work in process along with his interest in the partnership. The Court held taxpayer's partnership interest as a whole was a capital asset under § 117 with the gain derived from its sale taxable as a capital gain and not as ordinary income. At page 660:

"The Commissioner here attempts to segregate partnership accounts receivable and unbilled fees for work in process and arbitrarily label both past earnings. The Commissioner argues that fees billed but uncollected, together with potential fees for work in process but not ready for billing or collection were taxpayer's 'distributive share of partnership earnings' and therefore not a part of his partnership interest. We cannot agree.

"When taxpayer purchased his interest in the firm he became entitled to his proportionate share of all fees collected by such partnership, and a portion of such fees had on the date of his purchase been billed but uncollected and other fees were for work then in process. Such fees when collected were ordinary income and those receiving them, including taxpayer, paid a tax thereon for ordinary income.

"Taxpayer was on a cash receipts basis, as was the partnership. Uncollected fees for work in process not yet completed had not been transformed on the date of taxpayer's sale of his interest into gross income. * * * *"

One judge, dissenting, was not convinced taxpayer's share of the uncollected fees was a part of his proprietary interest in the partnership. At page 661, Judge Kerner said: "It cannot be gainsaid that fees earned for services performed constitute ordinary income, and that upon petitioner's withdrawal from the partnership, he had the right to receive his distributive share of the uncollected fees, or past earnings, of the partnership. Had he remained a partner, his share of the fees would have been taxable as ordinary income to him when collected. [Citing cases.] The courts have said that the sale of a right to receive ordinary income is not the sale of a capital asset. This is so even if the sale is of something which may be termed 'property.' In such a situation the sale price simply replaces the future income, but the sale price does not convert the ordinary income into capital gain."

The ratio of the Swiren decision was extended in Meyer v. United States, 7 Cir., 213 F.2d 278, to reach the same result on facts not altogether warranting it. Taxpayer on a cash basis of accounting sold his interest in a partnership operating on the accrual method. At that time his capital account was credited with a sum representing his share of the partnership profits earned and accrued. The trial court was reversed for treating gain derived from unwithdrawn (undistributed) partnership profits as ordinary income. Both Swiren and Meyer were criticized in Trousdale v. Commissioner, 9 Cir., 219 F.2d 563, and United States v. Snow, 9 Cir., 223 F.2d 103. The basis of criticism in Trousdale—affirming the trial court in finding the sale of a partnership interest not bona fide—was the inability of Meyer to distinguish Watson from Swiren. The basis of criticism in Snow—reversing the trial court for treating as capital gain, gain derived from accrued and unwithdrawn (undistributed) partnership earnings credited to capital account—was the assumption in Meyer that a taxpayer could sell or assign a right to receive ordinary partnership income and treat any gain as a capital gain so long as the capital asset which produced the ordinary income was also transferred.

In any event, the Government contends Swiren and Meyer have been overruled,

---

7. See Cohen v. Kelm, supra, at page 378.

in effect, by Hulbert v. Commissioner, 7 Cir., 227 F.2d 399. There a partnership agreement of sale provided for sellers to operate the business until the date of consummation. The Court held profit during that period belonged to sellers and affirmed the Tax Court in assessing deficiencies in their individual tax returns for the distributive share of net income whether distributed or not. As authority for its position, the Government cites Leff v. Commissioner, 2 Cir., 235 F.2d 439, 440, where it was held petitioners under a sale of their partnership interests, "must pay an ordinary income tax on the sales proceeds of their partnership shares to the extent that such proceeds reflect items otherwise taxable to them at ordinary income rates, i. e., current shares of profits, salary, and interest. Helvering v. Smith, 2 Cir., 90 F.2d 590; LeSage v. C. I. R., 5 Cir., 173 F.2d 826; United States v. Snow, 9 Cir., 223 F.2d 103, certiorari denied 350 U.S. 831, 76 S.Ct. 64 [100 L.Ed. 741]; Hulbert v. C. I. R., 7 Cir., 227 F.2d 399 (apparently overruling Swiren v. C. I. R., 7 Cir., 183 F.2d 656, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659, and Meyer v. United States, 7 Cir., 213 F.2d 278." I find the parenthetical reference unfounded. The Court in Hulbert simply was concerned with who, as a matter of law, must pay tax on the income. The majority ruled seller must pay. The dissent (per Lindley, J.) found the sum was income of the purchaser under the contract of the parties and referred to Swiren and Meyer merely to apply their teachings in limiting the partners' tax liability, as then computed, to capital gain from sale of assets. Nothing more than that was intended. If Swiren must fall, it must fall on grounds other than the authority of Hulbert v. Commissioner.

4. Evaluating the case authority, plaintiff, both on the brief and at argument, has stressed the diverse systems of accounting. Briefly, plaintiff argues where items were held taxable as ordinary income, the partnership was on an accrual basis with the firm's books showing accrued profits credited to the partner selling his interest, citing United States v. Snow, 9 Cir., 223 F.2d 103;[8] Leff v. Commissioner, 2 Cir., 235 F.2d 439; Karsch v. Commissioner, 8 T.C. 1327; and Goodman v. Commissioner, 1950 P.H.T.C. Memo. Dec. Par. 52,222; but, on the other hand, where items were held taxable as capital gain, the partnership was on a cash basis with each partner's share not distributable to him until partnership net income was determined, i. e., the collectible portion of accounts less partnership expenses incurred, citing Swiren v. Commissioner, 7 Cir., 183 F. 2d 656.

▆▆▆ Plaintiff's argument may have a modicum of surface validity, but I am satisfied, after a reading of the cases, differences in accounting methods in this factual picture are unreliable. Of course, the method of accounting regularly employed by a partnership is pertinent in computing a partner's taxable income so long as that method clearly reflects his income.[9] Where a partnership interest has ceased, for one reason or another, the Supreme Court has indicated income will not be clearly reflected by accounting methods, and specifically the cash method. In Guaranty Trust Company v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975, as related to the income of a deceased partner § 182 of the 1932 Code was interpreted in the light of another provision of that section dealing with overlapping taxable years of partner and partnership.[10] It was observed,

8. At page 107: "We believe that the Swiren case could be distinguished from the case at bar by giving greater attention to the dichotomy between capital gain and ordinary income and by emphasizing the different accounting bases of the partnerships."

9. See 26 U.S.C. §§ 41, 42; Boynton v. Pedrick, Collector, D.C.N.Y., 136 F.Supp. 888, 889.

10. Section 182 provided: "There shall be included in computing the net income of each partner his distributive share,

303 U.S., at pages 498–499, 58 S.Ct. at page 676: "As in the case of all other taxpayers, the partner's net income is required by the general provisions of section 41, 26 U.S.C.A. § 41 and note, to be computed 'upon the basis of the taxpayer's annual accounting period,' here the calendar year, so as clearly to reflect the income. And section 182(a) commands that the distributive share of each partner in the partnership profits shall be included in computing his tax, whether distributed or not. By these provisions the taxable income of a partner is limited to that share of the partnership earnings to which he becomes entitled within his taxable year, but it includes all the distributive share of the partnership income which accrues to him in that year even though earned in an accounting period not wholly within the year, and though his return, as in the case of decedent, is on the cash receipts and disbursements basis." This was followed by Helvering, Commissioner of Internal Revenue v. Enright's Estate, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093, where the Supreme Court had to fix the relation of § 182 to § 42 of the 1934 Code.[11] The issue, as stated by the Court, was whether § 42 permitted the inclusion as accruable items, in a decedent's gross income for the period ending with his death, of his share of the profits earned but not yet received, of a partnership, when both the decedent and the partnership reported income on a cash basis. The lower court, 3 Cir., 112 F.2d 919, treated the partnership as a tax computing unit separate from its members and reasoned although § 182 placed a partner on the accrual basis in accounting for his income from the partnership, the partnership income which accrues to him and for which he must account is only that shown to be distributable to him under the partnership agreement and the accounting method. Thus, our Court of Appeals concluded § 42 did not require the inclusion of accounts receivable and unbilled fees as amounts accrued. The Supreme Court reversed, among other reasons, on the ground the partner's return of his partnership earnings should not be dependent in such a case upon whether the partnership used the cash or accrual method of accounting. At pages 639–640 of 312 U.S. at page 780 of 61 S.Ct.: "So § 42 was drawn to require the inclusion of all amounts accrued to the date of death 'regardless of the fact that he may have kept his books on a cash basis.' " I find the language of the Supreme Court in point and entitled to weight.[12]

whether distributed or not, of the net income of the partnership for the taxable year. If the taxable year of a partner is different from that of the partnership, the amount so included shall be based upon the income of the partnership for any taxable year of the partnership ending within his taxable year." 26 U.S.C.A. Int.Rev.Acts, page 544.

11. Section 42 provided, inter alia: "In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period." 26 U.S.C.A. Int. Rev.Acts, page 679.

12. It has been said the Supreme Court in Guaranty Trust, supra, paid undue attention to the fact the income would escape taxation entirely unless taxed to decedent. But see Rabkin and Johnson, The Partnership Under the Federal Tax Laws, 55 Harv.L.Rev. 909, 934–935, n. 53. The Third Circuit for that reason felt constrained to avoid unnecessary extension of the holding remarking because the loophole had been filled by Congress in 1942, no such possible escape from taxation was involved. Girard Trust Company v. United States, 3 Cir., 182 F.2d 921, 924–925. The Second Circuit rejected any such argument as an unnatural interpretation unwarranted from a reading of the opinion: "It has been suggested that the Supreme Court was moved to decide that case as it did because then a contrary decision would have allowed income earned by a decedent in his lifetime to escape taxation altogether. We do not so read that opinion. Whatever was said as to nontaxability otherwise was merely an observation and not stated as a reason for the decision which was based upon an analysis of the applicable law which is equally applicable

5.  The problem was very much alive to the Congress.[13]  As a result the 1954 Code is in striking contrast to its predecessor on this subject.  As before, the partner is required to take into account separately his distributive share of a partnership's taxable income and the character of any item is to be determined as if realized directly from the partnership source.[14]  While the gain from the sale of a partnership interest continues to be recognized to the transferor partner as a capital gain, unrealized receivables are, for the first time, expressly excepted.[15]  The term "unrealized receivables" includes, to the extent not previously included in income under the method of accounting used by the partnership, any rights, contractual or otherwise, to payment for services rendered

now to require the same result in this case."  Commissioner of Internal Revenue v. Waldman's Estate, 2 Cir., 196 F. 2d 83, 85.  Enright's Estate, supra, openly reflected the declared purpose of Congress that income should not fail of taxation.  The Court, proceeding with that in mind, examined the issues and held the income taxable to decedent.  Said the Ninth Circuit: "The court undertook to effectuate this legislative objective of seeing to it that income which would have been taxable had the decedent lived to receive it should not escape income tax simply by reason of the decedent's death." Commissioner of Internal Revenue v. Linde, 9 Cir., 213 F.2d 1, 5.  Other courts, without comment, have accepted it as a legitimate consideration.  See, for example, United States v. Archer, 1 Cir., 174 F.2d 353; Commissioner of Internal Revenue v. United States Trust Co. of New York, 2 Cir., 143 F.2d 243; Bach v. Commissioner, 3 Cir., 124 F.2d 306; Commissioner of Internal Revenue v. McGlue's Estate, 4 Cir., 119 F.2d 167; Commissioner of Internal Revenue v. Cohen, 5 Cir., 121 F.2d 348; Commissioner of Internal Revenue v. Tyree's Estate, 10 Cir., 215 F.2d 78.  And subsequently, in holding corporate dividends not accruable as income on the date of declaration with a later record date, the Supreme Court pointedly observed no avoidance of taxes was involved such as congressional action was designed to prevent.  Estate of Putnam v. Commissioner, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023.

13.  Report of the Ways and Means Committee of the House of Representatives, Section XXII, p. 65:
  "The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate.  The published regulations, rulings, and court decisions are incomplete and frequently contradictory. As a result partners today cannot form,

operate, or dissolve a partnership with any assurance as to tax consequences.
  \*  \*  \*  \*  \*
  "Because of the vital need for clarification, your committee has undertaken the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws.  In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility, and equity as between the partners.
  "In general, the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting, and not a taxable, entity.  In addition, a statutory pattern has been established for \* \* \* transfers of partnership interests by sale \* \* \*."  Also see, to the same effect, Report of the Senate Finance Committee, Section XXIII, p. 89.
  Report of the Ways and Means Committee of the House of Representatives, Section XXII, p. 70:
  "Under the present decisions the sale of a partnership interest is generally considered to be a sale of a capital asset, and any gain or loss realized is treated as capital gain or loss.  It is not clear whether the sale of an interest whose value is attributable to uncollected rights to income gives rise to capital gain or ordinary income.  There is also doubt under present law whether the basis of the assets of the partnership may be adjusted, or is required to be adjusted, to reflect the purchase price paid by a new partner for his interest.
  "Because of the confusion in this area, basic rules have been set forth in order to clarify tax treatment and at the same time to prevent the use of the sale of an interest in a partnership as a device for converting rights to income into capital gain."  Also see, to the same effect, Report of the Senate Finance Committee, Section XXIII, pp. 97, 98.

14.  I.R.C.1954, 26 U.S.C. § 702(a) and (b).

15.  I.R.C.1954, 26 U.S.C. § 741.

or to be rendered.[16] Moreover, one provision now deals exclusively with the sale of an interest in partnership. It provides the amount of any money, or the fair market value of any property, to be received by a transferor partner in exchange for all or a part of his partnership interest, which is attributable to unrealized receivables is to be considered as an amount realized from the sale or exchange of property other than a capital asset.[17] Accordingly, the term capital asset is defined to exclude accounts or notes receivable acquired in the ordinary course of trade or business for services rendered.[18]

■ 6. Plaintiff urges the inapplicability of § 182 on the ground it pertains not to the disposition of partnership interest but to the earnings of going partnerships and whose obligation it is to pay the income tax. I cannot agree. The fact the earnings of going partnerships are a proper subject of § 182 neither restricts its terms, narrows its import, nor lessens its significance when the partnership interests are sold. Plaintiff cannot alter the general application of § 182 merely by transferring his interest.

■ If § 182 is applicable, plaintiff argues no distributive share could be taken of the accounts receivable since at the time of the sale, income was not actually realized by the partnership on the cash basis. On analysis the contention fails. The fact these accounts were uncollected, or might never be collected, is irrelevant. The simple answer is the sale price accelerated realization and replaced the ordinary income, and, for reasons previously stated, the method of accounting used by the partnership for reporting purposes is not controlling on this issue. As stated, the Supreme Court has not been faced with the exact situation, but there are cases, discussed earlier, in which partnership continuity ended and the Court was asked to designate the partner's interests for income tax purposes. On one occasion the Court indicated "receipt of income or accrual of the right to receive it" was the "test of taxability", and on another it defined "distributive share" to mean "only that gains attributable to the partner's interest in the firm were earned." [19] This legislative policy of taxing income which is earned, in the sense of accrued, as well as realized, has been supported by the weight of judicial authority [20] and is implicit in the revenue acts themselves.[21]

16. I.R.C.1954, 26 U.S.C. § 751(c).

17. I.R.C.1954, 26 U.S.C. § 751(a).

18. I.R.C.1954, 26 U.S.C. § 1221(4).

19. Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 498, 58 S.Ct. 673, 676, 82 L. Ed. 975; and Helvering, Commissioner of Internal Revenue v. Enright's Estate, 312 U.S. 636, 641–642, 61 S.Ct. 777, 781, 85 L.Ed. 1093, respectively.

20. See, i. e., Lucas, Collector v. Alexander, 279 U.S. 573, 49 S.Ct. 426, 73 L.Ed. 851; Lucas, Commissioner of Internal Revenue v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering, Commissioner of Internal Revenue v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering, Commissioner of Internal Revenue v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering, Commissioner of Internal Revenue v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison, Collector v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Hort v. Commissioner, 313 U.S. 28, 61 S.Ct.

757, 85 L.Ed. 1168; Commissioner of Internal Revenue v. Harmon, 323 U.S. 44, 65 S.Ct. 103, 89 L.Ed. 60; Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Commissioner of Internal Revenue v. Goldberger's Estate, 3 Cir., 213 F.2d 78; Commissioner of Internal Revenue v. Gregory Run Coal Co., 4 Cir., 212 F.2d 52; Le Sage v. Commissioner, 5 Cir., 173 F.2d 826; Floyd v. Scofield, Commissioner, 5 Cir., 193 F.2d 594; Caldwell v. Campbell, Collector, 5 Cir., 218 F.2d 567; Rhodes' Estate v. Commissioner, 6 Cir., 131 F.2d 50; Fisher v. Commissioner, 6 Cir., 209 F.2d 513; Galt v. Commissioner, 7 Cir., 216 F.2d 41; Brown v. Commissioner, 7 Cir., 220 F. 2d 12; United States v. Snow, 9 Cir., 223 F.2d 103; United States v. Baker, 10 Cir., 233 F.2d 195.

21. See, generally, the definition of gross income. 26 U.S.C. § 22.

■ Plaintiff then seeks to call accounts receivable property within the purview of the term capital assets under § 117 and apply that section on the theory it alone concerns the legal effect of a transfer of a partnership interest including those accounts. The issue before me, however, is not one in which a decision can be reached by looking solely at § 117. To do so would disregard the honored conception of capital assets in favor of a technical definition of property repugnant to the plain meaning of the statute.[22] While the sale of a partnership interest is treated as the sale of a capital asset, the sale of a right to receive ordinary income is not. In other words, the fact a right to receive income —here, an account receivable—is included by a taxpayer within the interest sold or transferred neither changes the basic nature of the right nor converts it into capital gain. Accordingly, the rationale of Swiren v. Commissioner, which has withstood judicial sniping in its home circuit, is rejected here. Nor is this conclusion unrealistic in that it remakes the transaction by ignoring what the parties to the sale actually did, as has been charged with respect to sales of going concerns.[23] Indeed, it would be unrealistic, and a matter of form not substance, to contend the parties would agree upon a sale price without first paying heed to the value of underlying accounts receivable. Since the Government seeks to do no less here, the result to be reached presents no more of a problem than it did to the Supreme Court in Watson v. Commissioner, supra.

■ In short, an amount must be allocated from the sale price of the partnership interest which represents the value fairly attributable to the presence of the accounts receivable at the time of the sale. To the extent this amount reflects income, rather than repayment of moneys previously disbursed for the client, such as suit deposits, payment to court reporters for depositions and records, recording and note entry fees, travel expenses, and the like, it is taxable as ordinary income. Plaintiff's sale of the partnership interest is otherwise properly subject to capital gains treatment. Since the record before me is incomplete, these

**22.** See Commissioner of Internal Revenue v. Hawn, 5 Cir., 231 F.2d 340.

**23.** See Judge Frank dissenting in Williams v. McGowan, 2 Cir., 152 F.2d 570, 573, 162 A.L.R. 1036: "I agree that it is irrelevant that the business was once owned by a partnership. For when the sale * * * occurred, the partnership was dead, had become merely a memory, a ghost. To say that the sale was of the partnership's assets would, then, be to indulge in animism. But I do not agree that we should ignore what the parties to the sale * * * actually did. They did not arrange for a transfer to the buyer, as if in separate bundles, of the several ingredients of the business. They contracted for the sale of the entire business as a going concern. * * * To carve up this transaction into distinct sales—of cash, receivables, fixtures, trucks, merchandise, and good will—is to do violence to the realities. I do not think Congress intended any such artificial result." Quoted with approval in Hatch's Estate v. Commissioner, 9 Cir., 198 F.2d 26, 30. In Watson v. Commissioner, 345 U.S. 544, 556–557, 73 S.Ct. 848, 855, no less than three Justices of the Supreme Court took the same position: "Mrs. Watson did not split the sale up into land, trees, and green fruit. She sold all as one, and at the same time. It is the Commissioner who breaks up her sale into parts and makes something out of it different from what it was, and then proceeds to tax the transaction as he remade it. I have always understood that tax laws deal with realities. It is unrealistic to treat an extraordinary sale for one consideration of real property, part of which is immature green fruit, which sale will put the seller completely out of business, as an ordinary sale in the course of trade or business, when the business being closed out had been one that dealt only in the sale of matured fruit. The Commissioner is not free to remake the transaction as he sees fit." It was this background of dissent which led another court, in comparing Williams with Hatch's Estate, to observe "there may be very substantial tax differences depending upon whether a sale is of a business by a single proprietor or of a business interest by a partner." First National Bank of Princeton v. United States, D.C.N.J., 136 F.Supp. 818, 824–825.

determinations must be made at trial, if not disposed of by stipulation. Therefore, both motions for summary judgment are denied, and further proceedings may be had not inconsistent with the views here expressed.