**SHERWOOD BLOCK CO., Inc., a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 69-30-CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Oct. 1, 1971.

John B. Fisher, Charleston, W. Va., for plaintiff.

Johnnie M. Walters, Helen E. Marmoll, Dept. of Justice, Washington, D. C., and W. Warren Upton, U. S. Atty., Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

FIELD, Chief Judge.

This is an action under 28 U.S.C. Section 1346(a) (1) for the recovery of federal income taxes and interest allegedly overpaid by the plaintiff in calendar years 1960, 1961, 1962 and 1963, amounting in the aggregate to $13,046.-93.[1] Briefly stated, the issues to be determined are what part, if any, of the purchase price paid for a cement block manufacturing business should be allocated to goodwill thereby reducing the depreciable basis of block equipment; and by how much, if any, plaintiff's cost-of-goods sold deduction taken in the year of purchase should be reduced.

Plaintiff's corporate income tax returns for calendar years 1960, 1962 and 1963 reported no taxes payable. For calendar year 1961, plaintiff reported $222.15 in taxes payable. Thereafter, the amounts sued for here were timely assessed. All amounts assessed were paid on or about the dates set forth below:

| Date | Income Tax Deficiency | Penalty | Interest | Total |
| --- | --- | --- | --- | --- |
| September 16, 1963 | $2,856.82 | $142.84 | | $ 2,999.66 |
| November 8, 1963 | | | $ 428.99 | 428.99 |
| November 3, 1965 | 8,317.27 | | | 8,317.27 |
| January 28, 1966 | | | 1,443.85 | 1,443.85 |
| | | | | $13,189.77 |

Timely claims for refund were thereafter filed seeking in the aggregate a refund of $13,189.77 alleged to have been erroneously and illegally collected. Within due course this action timely followed on February 14, 1969.

Plaintiff manufactures cinder or building block, a business which it entered July 1, 1960. On that date, plaintiff purchased the building block manufacturing plant which had been operated as a sole proprietorship by Terrence R. Sherwood since the 1940s. Plaintiff paid $110,566.33 for the business; $16,-066.33 for the inventory and $94,500 for the land, buildings, fixtures, office furniture, vehicles, and block equipment.

---

1. A five-percent negligence penalty in the amount of $142.84 for calendar year 1960 is no longer in dispute, but the amount thereof will be adjusted to reflect the results of this action. Also, some of the taxes and assessed interest placed in suit are attributable to minor items each of which has been conceded by one side or the other.

Plaintiff's corporate income tax return for 1960, the year of purchase, listed a depreciable basis in the block equipment of $80,900. Office furniture and fixtures were listed at a $300 cost, storage lot improvements at a $300 cost, buildings at a $5,700 cost, and the seven purchased vehicles at an aggregate cost of $6,500. The remaining $800 was the cost assigned to the land. Also, in computing its cost-of-goods sold deduction, plaintiff valued its closing inventory at $20,891.50, which represents the retail price less 38 percent.

Upon audit the Internal Revenue Service attributed $59,140 of the $110,566.33 purchase price to goodwill and reduced the depreciable basis of plaintiff's block equipment from $80,900 to $21,760. The Internal Revenue Service also reduced plaintiff's cost-of-goods sold deduction by increasing the value of closing inventory from retail price less 38 percent to retail price less 20 percent.

The question as to whether a business has goodwill is primarily a question of fact. Miller v. Commissioner of Internal Revenue, 333 F.2d 400 (C.A.8, 1964). Here, the business had been organized in the late 1940s. Mr. Sherwood, the organizer, only became interested in selling due to his failing health. Negotiations for purchase of the business from Mr. Sherwood were conducted by plaintiff's main stockholder, William H. Peden. Mr. Peden, a registered public accountant, had long since assisted Mr. Sherwood with his accounting work. As Mr. Sherwood's accountant, Mr. Peden knew the financial condition of the business.

When negotiations began, Mr. Sherwood wanted $150,000 for the business. Later, this figure was reduced to about $125,000, and then once again to the actual selling price, $94,500 plus $16,066.-33 for inventory. After hearing both Mr. Sherwood and Mr. Peden testify, it is clear to this Court that this sale was an arms-length transaction preceded by some very real negotiating on the part of each party to the sale.

Equally clear, however, is the fact that Mr. Sherwood was selling, and Mr. Peden was buying, one entire business with whatever goodwill that business might have. The contract of sale, although by no means conclusive, provides for the sale of the goodwill as well as the other assets of the business.[2] The mere failure to discuss or to negotiate specifically for goodwill does not control the tax consequences of the sale, particularly in a transaction which involves the sale of an entire business. See Copperhead Coal Co. v. Commissioner of Internal Revenue, 272 F.2d 45 (C.A.6, 1959).

The business which Mr. Sherwood sold was profitable albeit small. The same employees went with the business, including Mr. Sherwood's son. Mr. Sherwood left plaintiff at least 35 customers and he continued to work after the sale showing Mr. Peden all he could about the business. Also, plaintiff kept the same name for the business as Mr. Sherwood had used. All of this is an indication that the business had some goodwill.

Finally, character is an accepted indication that a business has goodwill. Schulz v. Commissioner of Internal Revenue, 294 F.2d 52, 56 (C.A.9, 1961). Thus a sympathetic bartender or a knowledgeable butcher or a gregarious grocer may be the economic mainstay of the neighborhood tavern, the local butcher shop or the corner grocery. It appears from the evidence here, particularly the testimony of Mr. Sherwood, that the success of this business has resulted

---

2. Testimony offered by plaintiff through Mr. Peden and through the lawyer who drafted the contract of sale is clearly inadmissible to contradict the terms of the contract. The scrivener's testimony is precluded by the parol evidence rule and Mr. Peden's reiteration of what the lawyer told him is obviously hearsay. Moreover, even if such testimony were deemed to be admissible, it is of very little persuasive value, the scrivener having admitted at the outset that he remembered nothing of the negotiations for, or execution of, the contract.

at least in part from the character of Mr. Sherwood himself.

In total, the evidence demonstrates that Mr. Sherwood transferred at least some goodwill when he sold the business. How much that goodwill was worth is a much more difficult matter. Nevertheless common sense renders two points abundantly clear.[3] The $59,140 attributed to goodwill by the Commissioner is too high and the $800 allocated by plaintiff and the seller to land is too low.

The amount of goodwill found by the Commissioner amounts to over half the total purchase price. Yet price is the primary competitive factor in the cement block manufacturing business in Kanawha County, West Virginia. Customer relations and like methods of incurring goodwill help as they did in Mr. Sherwood's business, but price remains the overwhelming determinant.

On the other hand, land is also a nondepreciable asset and only $800 has been allocated to the land. The company is located at 2931 Piedmont Road, off of Kanawha Boulevard near the Interstate in the industrial section. An $800 price is obviously out of line with the true value of the land.

The group of assets involved in the Commissioner's determination is the block equipment to which plaintiff attributed a depreciable basis of $80,900. The equipment was in good condition although it was virtually fully depreciated in the seller's hands. By attributing $59,140 to goodwill the Commissioner revalued the block equipment at $21,760. This was done strictly through use of a formula prescribed by A.R.M. 34, 2 Cum.Bull. 31 (1920). Government Ex. 2. Under another accounting method demonstrated at trial the amount allocable to goodwill was $52,155.09. Government Ex. 3. Each formula however depends in part on a figure which represents a percentage of net tangible assets. Each formula therefore depends in part

for the validity of the result on the seller having taken the proper amount of depreciation. It appears by hindsight that Mr. Sherwood depreciated the block equipment at a faster rate than the true life of the equipment justified. Thus the goodwill figures under any formula approach which relies on net tangible asset figures will inevitably be inflated.

■ Taking all of the above in consideration, it is this Court's finding that the block equipment has a depreciable basis as of the date of sale of $51,330. The remainder of the $80,900 allocated by plaintiff to the block equipment is attributable at the date of sale either to the land or to goodwill, neither of which is depreciable.

■ The next issue concerns the valuation of plaintiff's 1960 closing inventory. The issue is a factual one. Cohen v. Kelm, 119 F.Supp. 376 (Minn. 1953). As with the goodwill issue, the burden of proof is on the plaintiff. Compton v. United States, 334 F.2d 212, 216 (C.A.4, 1964).

Mr. Sherwood had been valuing his inventory at retail price less 38 percent. Plaintiff adopted the same method. The Commissioner changed this method to retail price less 20 percent which naturally increased the value of the closing inventory and simultaneously reduced plaintiff's cost-of-goods sold deduction.

■ Mr. Sherwood's costs had remained constant over the years. Plaintiff however experienced increased costs almost immediately after the purchase. In my opinion the plaintiff has failed to prove by a preponderance of the evidence that the Commissioner's determination on this issue was in error.

The deficiency assessment should be recomputed in the light of the conclusions stated herein, and counsel may prepare an appropriate judgment order incorporating this opinion by reference therein.

---

3. On a Court's reliance on common sense or common knowledge in a tax refund suit, see Arvonia-Buckingham Slate Co. v. United States, 426 F.2d 484, 486 (C.A. 4, 1970).