James M. TUNNELL, Jr., and Mildred S. Tunnell, Appellants,

v.

UNITED STATES of America.

No. 12541.

United States Court of Appeals Third Circuit.

Argued May 15, 1958.

Decided Oct. 8, 1958.

James M. Tunnell, Jr., Wilmington, Del., for appellants.

Louise Foster, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Louise Foster, Attys., Dept. of Justice, Washington, D. C., Leonard G. Hagner, U. S. Atty., Wilmington, Del., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiffs, husband and wife, commenced this action to recover alleged overpayment of their income taxes for the calendar year 1951, when they filed a joint return. Although the district court entered judgment in their favor, 148 F. Supp. 689, the plaintiffs' deem the amount inadequate and therefore prosecute this appeal.

The single issue presented is whether the entire proceeds from the sale by husband-plaintiff (hereinafter called the taxpayer) of his interest in a partnership of lawyers is subject to capital gains treatment, or a portion thereof, attributable to earned but uncollected fees, must be taxed as ordinary income.

The facts are as follows:

In 1951, taxpayer owned a fifty percent partnership interest in a law partnership. On June 7, 1951, he withdrew from the partnership. On November 2, 1951, taxpayer and his partners entered into an "Agreement of Dissolution of Partner-

ship" which recited, among other things, that they desired to put in writing the settlement of the partnership rights and obligations. In this document, taxpayer transferred and assigned to the remaining partners all his right, title or interest in the law firm, its good will, furniture, fixtures, bank account, book accounts, and claims for any services which had been rendered prior to June 7, 1951, but which had not progressed far enough to justify billing; in consideration taxpayer was to receive from the remaining partners the sum of $27,500, of which $18,116.07 was acknowledged to have been paid to taxpayer on June 6, 1951, and the balance, $9,383.93, was to be paid following execution of the written agreement.

At the time taxpayer withdrew from the firm, the partnership books showed accounts receivable, charged on the books but uncollected, in the amount of $21,833.51.

Both the taxpayer and the partnership were on the "cash receipts and disbursements", rather than the "accrual", accounting basis. The taxpayer and his wife included in their joint return the proceeds of the sale of taxpayer's partnership interest, treating $24,192.87.[1] thereof as ordinary income. Subsequently taxpayer concluded that the entire amount of the proceeds of the sale was gain derived from the sale of a capital asset held for more than six months, and he filed a petition for refund. This petition was denied.

Proceeding to the district court, the taxpayer contended that a partnership interest, under Section 117 of the Internal Revenue Code of 1939, 26 U.S.C. § 117, is a capital asset; that a sale of a partnership interest is not divisible in-

to segments for tax purposes; that there was no net income realized from the receivables and he owned no distributive share on the date of the sale. Accordingly, taxpayer concluded that Section 182 of the Internal Revenue Code of 1939[2] is inapplicable, and that he is entitled to capital gain treatment on the entire proceeds of the sale.

The United States did not dispute that a partnership interest is a capital asset.[3] But it did contend that to the extent the sale of taxpayer's partnership interest reflected his interest in accounts receivable, computed at 50% of $21,833.51, or $10,916.76, it was a distributive share of partnership earnings and taxable as ordinary income. Consistent with this theory, the government conceded that the difference between that sum and the total price, or $13,276.11, is subject to capital gain treatment, and that the taxpayer should have a refund to that extent.

The district court treated the contentions of the parties at length, and discussed the pertinent authorities. It rejected the distinction between "cash" and "accrual" accounting bases as a reliable guide: compare Swiren v. Commissioner, 7 Cir., 1950, 183 F.2d 656, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659; Meyer v. United States, 7 Cir., 1954, 213 F.2d 278, and United States v. Snow, 9 Cir., 1955, 223 F.2d 103, 107, footnote 1, certiorari denied 350 U.S. 831, 76 S.Ct. 64, 100 L.Ed. 741. It concluded that while the sale of a partnership is treated as the sale of a capital asset, the sale of a right to receive ordinary income is not. Accordingly, it held that the proceeds of the sale of taxpayer's partnership interest, to the extent that it was attributable to the presence of accounts receivable at the time

1. $27,500, less $3,307.13, the adjusted basis of fixed assets.

2. "Sec. 182. Tax of partners
"In computing the net income of each partner, he shall include, whether or not distribution is made to him—
    \*    \*    \*    \*    \*

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)." 26 U.S.C.1952 ed., Sec. 182.

3. See G.C.M. 26379, 1950–1 C.B. 58, and the cases cited therein, revoking G.C.M. 10092, XI–1 C.B. 114 (1932).

918

of the sale, was taxable as ordinary income.[4]

We agree with these conclusions of the district court.

In Commissioner of Internal Revenue v. P. G. Lake, Inc., 1958, 356 U.S. 260, beginning at page 265, 78 S.Ct. 691, at page 694, 2 L.Ed.2d 743, the Supreme Court said:

"The purpose of § 117 was 'to relieve the taxpayer from * * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions.' See Burnet v. Harmel, 287 U.S. 103, 106, 53 S.Ct. 74, 75, 77 L.Ed. 199. And this exception has always been narrowly construed so as to protect the revenue against artful devices. See Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29.

"We do not see here any conversion of a capital investment. *The lump sum consideration seems essentially a substitute for what would otherwise be received at a future time as ordinary income.* The payout of these particular assigned oil payment rights could be ascertained with considerable accuracy. * * * [c]ash was received which was equal to the amount of the income to accrue during the term of the assignment, the assignee being compensated by interest on his advance. The substance of what was assigned was the right to receive future income. The substance of what was received was the present value of income which the recipient would otherwise obtain in the future. *In short, consideration was paid for the right to receive future income, not for an increase in the value of the income-producing property.*

"These arrangements seem to us transparent devices. Their forms do not control. Their essence is determined not by subtleties of draftsmanship but by their total effect. See Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. We have held that if one, entitled to receive at a future date interest on a bond or compensation for services, makes a grant of it by anticipatory assignment, he realizes taxable income as if he had collected the interest or received the salary and then paid it over. That is the teaching of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and Harrison v. Schaffner, supra; and it is applicable here. As we stated in Helvering v. Horst, supra, 311 U.S. 117, 61 S.Ct. 147, 'The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them.' There the taxpayer detached interest coupons from negotiable bonds and presented them as a gift to his son. The interest when paid was held taxable to the father. *Here, even more clearly than there, the taxpayer is converting future income into present income.*" (Emphasis supplied.)

■ The fundamental principle reiterated and applied in the quoted case fills the interstices of the 1939 Code, and, in our opinion, disposes of the taxpayer's attempt to take advantage of express provisions dealing with the issue. Although the Lake case was not decided at the time the district court decided the instant case, its essence was applied in

4. The problem of the instant case is disposed of by express provisions of the Internal Revenue Code of 1954, 26 U.S.C. § 751(c) and § 1221(4), which require treatment of proceeds of the sale of a partnership interest attributable to accounts receivable as ordinary income.

the analogous case of United States v. Snow, supra, citing, 223 F.2d at page 108; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75,[5] and Fisher v. Commissioner, 6 Cir., 1954, 209 F. 2d 513, certiorari denied 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136, among other cases. To the same effect is Leff v. Commissioner, 2 Cir., 1956, 235 F.2d 439. As stated in United States v. Snow, supra, "The general rule is that a right to receive ordinary income, produced by a capital asset, is not transmuted into a capital asset by the sale or assignment of the capital asset together with the right to receive the ordinary income." 223 F. 2d at page 108.

In the instant case, at the time taxpayer sold his partnership interest, fees had been earned. Although these were not then collected, taxpayer's right as to them was complete, and the collection of the fees would have resulted in ordinary income. The payment of the purchase price, for which a part of the quid pro quo was taxpayer's right to receive this income, was as to that part essentially a substitute for what would otherwise be received at a future time as ordinary income. And as to that part, it was not appreciation in value of the capital asset, which would be capital gain, but income produced by the capital asset, which is ordinary income.

■■ Finally, the taxpayer now suggests that "no business man in his right mind would appraise the fair value of a list of uncollected accounts receivable as being the same as the face value thereof." But this assertion is made in support of his proposition that the accounts receivable did not represent "partnership profits distributable" to the partners.

Both parties in the district court moved for summary judgment. The district court determined, 148 F.Supp. 689, 697, that "an amount must be allocated from the sale price of the partnership interest which represents the value fairly attributable to the presence of the accounts receivable at the time of the sale." It also pointed out that taxpayer was entitled to credit to the extent payment of the accounts receivable reflected repayments of moneys disbursed by the partnership on the client's behalf. Accordingly, the district court denied both motions for summary judgment on the ground that factual determinations would have to be made, as to which the record was then incomplete. The parties then entered into a stipulation to dispose of the mathematical computation. But even though the district court may have assumed that taxpayer and his partners allotted to the total of the partnership accounts receivable a valuation equal to the face value thereof, taxpayer has contented himself with the legal argument for capital gain treatment, and has not asserted, except in the oblique way indicated, that there is anything to be gained on his part in trying to establish that the fair value of the accounts was something less than the face amount. Since the determination of the Commissioner is accompanied by a presumption of correctness, intended as protection against those intangibles which the taxpayer is in a better position to know, it devolved upon taxpayer to assert and establish the fair value of the accounts. We do not understand that he makes such assertion for that purpose here.

For the reasons stated, the judgment of the district court will be affirmed.

---

5. In Helvering v. Horst, 311 U.S. 116, 61 S.Ct. 146, it was said: "But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor."