OPINION. Opper, Judge: Although the parties at times refer to the transaction involved here as the “sale” of petitioner’s partnership interest, the arrangement particularly as it was carried out by the participants shows unequivocally that what they did was to liquidate and wind up the partnership, collect the outstandings, and divide the proceeds. Under this procedure, petitioner did not receive from his ex-partner a lump sum to compensate for a transfer of something to his ex-partner,[1] but all that happened was that the liquidating partner continued to collect the receivables, and as the proceeds were received he gave petitioner his share (one-half). In other words, there was here no “lump-sum”[2] consideration for a business whose assets include accounts receivable with the connected questions of whether the latter are “sold” as a capital asset on the one hand or transformed into cash but as ordinary income, on the other. See, e. g., Tunnell v. United States, (C. A. 3) 259 F. 2d. 916. Nor, for the same reason, do we have present here any problem of valuation. See Tunnell v. United States, supra. True, the uncollected items of services already performed were given an estimated figure by the parties in connection with the agreement of dissolution. But that was not what petitioner received, nor what the respondent seeks to tax. Irrespective of the previously estimated amount, what petitioner was paid during the instant tax year — and that is all that is here involved — was exactly half of the total net proceeds actually collected by the liquidating partner, which, incidentally, was less than the earlier estimate. Petitioner earnestly contends that this is a case of first impression, because the receivables allocated to him, while they derived from services already performed and completed, arose out of continuing contracts which had to be finally concluded before the amounts contracted for could be collected; and that the agreement of dissolution required his ex-partner, and not petitioner, to complete the contracts and absolved petitioner from further participation. It may be remarked parenthetically that the evidence is by no means convincing to that effect and, for all that appears, at least some of the collections were from contracts already wound up when the firm dissolved. We have been unable to make any specific finding in that respect one way or the other. But be that as it may, the question propounded by petitioner does not arise on this record for the reasons already given. As to what would be the result if petitioner’s ex-partner had paid him a specified amount in advance for the privilege of completing the contracts and collecting the entire compensation at their conclusion we need intimate no opinion. But see Berry v. United States, (W. D., Tenn., July 21, 1958) - F. Supp. -. That this did not occur has already been pointed out. The agreement of dissolution was in the simplest possible form, and while an amount had to be estimated for the portion of the total receipts attributable to past services,[3] petitioner’s share of that amount was in substance and in fact not paid him at all by his ex-partner, who was merely a collecting agent, but by the client for whom he and his ex-partner had both performed the services for which payment was being made;[4] and petitioner, as he would in a continuing partnership, received for those services only the partnership share to which the original transaction would have entitled him. Presumably if the ex-partner had collected nothing for the previously completed services, he would have owed nothing to petitioner and the latter would have received nothing in spite of his agreement to let his ex-partner continue the business. The latter thus passed without consideration. It is hence entirely appropriate to say here, as it was in the words of Judge Kalodner in Tunnell v. United States, supra, that: In the instant case, at the time taxpayer sold his partnership interest, fees had been earned. Although these were not then collected, taxpayer’s right as to them was complete, and the collection of the fees would have resulted in ordinary income. For the reasons stated, we find no error in respondent’s determination. Decision will he entered for the respondent. This characterization follows not so much from the testimony of the ex-partner that there was no sale as from the inescapable operation of the transaction itself. Certain agreements were made as to the tangible assets, such as furniture and equipment, but that phase is not in dispute. To put It another way, it was agreed that the fees for any wort performed after the dissolution date would belong entirely to the ex-partner. “I acquired the remaining work in those contracts and carried then) on to completion and that is what was meant by that statement.” (Lodal’s testimony ; emphasis added.) It is hence inapposite even to attempt to invoke here the doctrine of such cases as Helvering v. Horst, 311 U. S. 112, 116, that: “the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive Income, can escape taxation because he has not himself received payment of it from his obligor.” (Emphasis added.)