Chrissie H. Woodhall, a widow v. Commissioner. Estate of W. Lyle Woodhall, Deceased, Chrissie H. Woodhall, Executrix v. Commissioner.
Woodhall v. Commissioner
Docket Nos. 5610-67, 5613-67.
United States Tax Court
T.C. Memo 1969-279; 1969 Tax Ct. Memo LEXIS 13; 28 T.C.M. (CCH) 1438; T.C.M. (RIA) 69279; December 22, 1969, Filed George Constable 14th Floor, Morton Bldg., 801 Second Ave., Seattle, Wash., for the petitioners. Lee A. Kamp, for the respondent. FORRESTER
Memorandum Opinion FORRESTER, Judge: In these consolidated cases, respondent has determined deficiencies in income taxes as follows: DocketNo.
Petitioners
TaxableYear Ended
Defi- cien - cies
5610-67
Chrissie H. Woodhall
12/31/65
$388.12
5613-67
Estate of W. Lyle Woodhall
12/31/64
370.90
5613-67
Estate of W. Lyle Woodhall
12/31/65
722.80
All of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by this reference. The only issue for decision is whether payments received by the estate of a deceased partner (cash basis partnership) in 1964 and 1965 and by the surviving spouse in 1965, constitute ordinary income to the extent that such amounts are allocable to unrealized receivables. [1]
*17 W. Lyle Woodhall (hereinafter sometimes referred to as Lyle or decedent) and Chrissie H. Woodhall (hereinafter sometimes referred to as Chrissie or petitioner) were husband and wife. Lyle died on January 20, 1964. Chrissie is petitioner herein both individually and as executrix of the estate of her deceased husband. At the time of the filing of the petitions herein her residence was Walla Walla, Washington. For the calendar year 1964 Chrissie filed a joint income tax return as a surviving spouse with the district director of internal revenue at Tacoma, Washington. For the calendar year 1965 she filed an individual income tax return with the district director of internal revenue at Tacoma, Washington. A fiduciary income tax return (Form 1041) for the estate of W. Lyle Woodhall was filed for 1964 for the period beginning January 20 and ending December 31. A fiduciary income tax return was also filed for the calendar year 1965. Decedent, W. Lyle Woodhall, was associated with his brother, Eldon M. Woodhall (hereinafter sometimes referred to as Eldon), in a cash basis partnership engaged in the lathing and plastering contractor business in Walla Walla, Washington. The partnership, *18 carried on under the name of Woodhall Brothers, was formed on January 20, 1958. 1439 There was no written partnership agreement. The partners, however, acted as equal general partners from its formation. A final return of the partnership was filed on Form 1065 for the period ending January 20, 1964. On December 26, 1961, Lyle and Eldon executed a buy-sell agreement which read as follows: AGREEMENT AGREEMENT between W. Lyle Woodhall and Eldon M. Woodhall, each of Walla Walla County, Washington. WITNESSETH: WHEREAS the parties are co-partners doing business under the name of "Woodhall Brothers", in which partnership each of the parties has an equal interest, except insofar as the capital investment and drawing accounts are not, at present, equal, and WHEREAS the parties desire to provide for the event of the death of one of them during the continuation of the partnership. NOW, THEREFORE, for good consideration it is agreed as follows: 1. Upon the death of either partner the partnership shall terminate and the survivor shall purchase the decedent's interest in the partnership. The net worth of the partnership to determine the purchase price to be paid by the survivor, *19 shall be established as follows: a. Accounts payable shall include all expenses incurred to date of death. Adjustment shall then be made to equalize the capital investment and drawing accounts of the partners. b. Machinery, equipment, vehicles and other tangible personal property owned on January 1, 1962 shall have a valuation of $6850.00 for the calendar year 1962, plus additional like property purchased during the calendar year, at cost, less straight line depreciation from date of purchase to date of death. Annually thereafter the partners will agree to a new valuation for such property on hand at the beginning of each calendar year. If any of such property is sold, the sale price shall be deducted from the valuation. c. Stock on hand shall be valued at cost. Only stock ordered and on hand and not included in receivables arising from work in progress shall be considered as "stock on hand." d. Accounts receivable arising from work in progress as of the date of death shall be computed on a cost-plus basis, except for contracts taken on a bid price, which shall be computed on a percentage of completion basis. Accounts payable shall include all expenses incurred to date of death. *20 The valuation of accounts receivable shall be subject to re-evaluation for bad debts so that losses through bad debts and costs of collection shall be shared. e. No valuation shall be given to unfinished work in progress or good will. f. Any other property of the partnership shall be valued at fair market value. 2. Upon the death of a partner, the surviving partner shall become the owner of and entitled to possession of all of the property of the partnership, including cash and partnership bank accounts. He shall complete all work in progress and hold the estate of the deceased partner harmless from all further liability thereon. He shall be entitled to all unearned profit and shall bear any loss on work in progress earned or incurred after the death of the deceased partner. It is the intention that for work in progress the partnership interest will be the profit or loss to date of death, as reflected in the receivables accrued to date of death and expenses accrued to date of death. 3. The surviving partner shall pay to the estate of the deceased partner one-half of the net worth of the partnership as determined above in the manner following: a. The first $5,000.00 on or *21 before 30 days after the death of decedent. b. The balance shall be paid in annual installments, commencing on or before one year after death of deceased partner, as follows: If the total balance is $30,000 or more, at least one fifth of such balance each year. If the total balance does not equal $30,000 then the installments shall be at least $5,000 per year until the full payment of purchase price. c. Any adjustments for bad debts shall be made on the last payment. d. Deferred payments shall not bear interest until maturity and thereafter at the rate of 4% per annum. e. The surviving partner having received all of the assets of the partnership, shall pay all accounts payable of the partnership and save the estate of the deceased partner harmless from all further liability thereon. DATED this 26th day of December, 1961. /s/ W. L. Woodhall /s/ Eldon M. Woodhall After Lyle's death and pursuant to the buy-sell agreement between Lyle and Eldon, a worksheet was prepared by an accountant showing the following: 1440 Assets
Current Assets
Seattle First National Bank
$22134.29
Accounts Receivable
$90568.06
Allowance for Doubtful Accounts 1470.32 89097.74
Interest Receivable
113.75
Inventory-Material Supplies (at cost) 2898.00
Total Current Assets
$114243.78
Investments
Principal Notes, Walla Walla Aerie No. 26, FOE (face value)
4000.00
Fixed Assets
Lot and Warehouse
$ 3150.00
Trucks & Equipment 10451.41
Total Fixed Assets
13601.41
Other Assets
Prepaid Expense
$ 954.66
Accounts Receivable-Employees 934.31
Total Other Assets 1888.97
Total Assets
133734.16
Liabilities
Current Liabilities
Accounts Payable
$14653.28
Wages Accrued
1992.68
Payroll Tax Accrued
10462.39
Other Tax Accrued
233.66
Interest Accrued
113.33
Notes Payable-Seattle First National Bank 10000.00
Total Liabilities 37455.34
Partnership Net Worth-January 19, 1964 before adjustment for unequal capital and drawing accounts
96278.82
Less Adjustment due W. Lyle Woodhall estate to equalize capital and drawing accounts 13763.51
Partnership Net Worth - January 19, 1964 after adjustment for unequal capital and drawing accounts 82515.31
One-half Net Worth - January 19, 1964 (per partnership agreement)
* 41557.66
*22 1441 In decedent's Federal estate tax return (Form 706) the value of Lyle's partnership interest was reported on Schedule F as follows: Value at date of death
Woodhall Bros., a partner- ship, (See Annex "F" attached hereto), inter- est of W. Lyle Wood- hall
$41,257.66
Additional capital contri- bution
13,763.51
$55,021.17
Community 1/2
$27,510.59
On Schedule D of her income tax return for 1964, Chrissie reported, under longterm capital gains and losses, the sale of her community property share (one-half) of decedent's partnership interest in Woodhall Brothers. On Schedule D of decedent's 1964 fiduciary income tax return (Form 1041) Chrissie, as executrix of Lyle's estate, reported under short-term capital gains and losses the sale of decedent's community property share of his partnership interest in Woodhall Brothers. [2] No gain was reported on either return. This was so because on each of the returns the basis of the property was reported as $29,992.66, which amount was shown as exactly equal to the gross sales price. *23 The computations of basis and sales price were identical on the above returns, as follows: *10 Sale of Partnership Interest - Woodhall Bros. Computation of Selling Price
Amount realized
$41,257.66
Share of liabilities assumed by vendee 18,727.67
Gross selling price
$59,985.33
Less One-half belonging to surviving spouse 29,992.67
Estate's share of selling price $29,992.66
Computation of Basis
Basis under Section 732(d) election
(schedule attached)
$59,985.33
Less One-half belonging to surviving spouse 29,992.67
Estate's share of basis $29,992.66 In computing the basis of the partnership interest, petitioner, individually and as executrix, claimed an increase in basis under section 732(d)[3] and submitted the following computations with the above returns: *24 COMPUTATION & ALLOCATION OF SPECIAL BASIS ADJUSTMENT UNDER SECTION 732(M)
Computation of Special Basis Adjustment
Estate's basis of partnership interest
$59,985.33
Share of partnership's adjusted basis of assets 11,046.04
Special Basis Adjustment $48,939.29 *10 Allocation of Special Basis Adjustment
Share of
Partnership's
Special Basis
Basis under
Description
Adjusted Basis
Adjustment
Section 732(d)
Seattle First National Bank
$ 4,185.39
$ 4,185.39
Accounts Receivable
$44,548.87
44,548.87
FOE Principal Notes
2,000.00
56.88
2,056.88
Inventory Material & Supplies
1,449.00
1,449.00
Lot & Warehouse
869.42
705.58
1,575.00
Equipment
3,524.08
1,701.63
5,225.71
Prepaid Expense
477.33
477.33
Advances to Employees
467.15
467.15
Total $11,046.04
$48,939.29
$59,985.33 1442 In his statutory notice of deficiency to the estate of W. Lyle Woodhall for the year 1964, respondent's explanation of adjustments stated: Explanation of Adjustments (a) It is determined that you realized ordinary income in the amount of $2,080.28 from disposition of the unrealized receivables of the Woodhall *25 Bros. partnership. Accordingly, taxable income is increased in the amount of $2,080.28 computed as follows: 1/2 of partnership unreal- lized receivables
* $45,784.03
Sales price of partnership interest
** 55,021.07
Percentage of payments re- ceived applicable to Re- ceivables - $45,784.03 55,021.07 = 83.211%
Payment received in 1964 - $5,000.00 X 83.211
4,160.55
Less: spouses 1/2 commu- nity interest 2,080.27
Increase to income
$ 2,080.27
Except for requisite differences in language and for amounts received in the respective years, respondent's notice of deficiency to the estate of W. Lyle Woodhall, and his notice of deficiency to Chrissie, individually, each for the calendar year 1965, were the same. Respondent's explanation of adjustments to Chrissie stated: Explanation of Adjustments (a) It is determined that you realized ordinary income in the amount of $4,160.55 from disposition of the unrealized receivables of the Woodhall Bros. partnership. Accordingly, taxable income is increased in the amount of $4,160.55 computed as follows: 1/2 of partnership unreal- ized receivables
* $45,784.03
Sales price of partnership interest
** 55,021.27
Percentage applicable to pay- ments received $45,784.03 55,021.27 = 83.211%
Payment received in 1965 - $10,000 X 83.211
8,321.10
Less 1/2 community inter- est 4,160.55
Increase to taxable income
$ 4,160.55
*26 Petitioner takes the position that the basis of the partnership interest (both in her hands and in the estate) equaled the amount received and, therefore, neither gain nor loss was realized either to her individually or to the estate of W. Lyle Woodhall on the sale of decedent's partnership interest. In her individual income tax return as a surviving spouse and in the estate income tax return (Form 1041), petitioners claimed a special basis adjustment under section 732(d). On brief petitioners argue that, regardless of the application of section 732 (d), the basis of decedent's partnership interest in the hands of petitioner, individually and as executrix of decedent's estate is (under section 742[4] and section 1014[5] ) the fair market value at the date of Lyle's death. Thus, petitioners argue, since the fair market value of the interest equaled the amount to be received under the terms of the buy-sell agreement, no gain or loss was realized. Respondent contends that petitioner, as executrix and individually, must recognize ordinary income under 1443 section 691[6] to the extent of unrealized receivables included in the *27 purchase price. *28 At the outset we find, in the instant case, that section 741[7] is applicable in determining the recognition and character of gain or loss. The partnership terminated (by agreement of the parties) on death, yet the survivor was contractually bound to purchase the interest of the deceased partner. We think section 741 was intended to apply, inter alia, to this particular fact situation. We recognize that section 741 speaks in terms of gain or loss "to the transferor partner" and that in the instant case, technically no transferor partner existed as a result of the termination. Section 1.741-1(b), Income Tax Regs. (1956), however, recognizes the application of section 741 when the sale of the partnership interest in a two-man partnership results in a termination under section 708(b) (statutory termination by sale). Accordingly, we think section 741 is applicable not only when the termination of a partnership is precipitated by sale (section 708(b)), but also when the sale of a partnership interest is precipitated by termination. [8]
*29 We note that no specific Code section is directed to the determination of the basis of a partnership interest received upon the death of a partner. M. Pauline Casey, 38 T.C. 357, 375 (1962). As we interpret the Code and as pointed out in Casey, the applicable section herein would be section 1014, which we are referred to from section 742. It is in the application of section 691 and section 1014(c)[9] that the controversy in the instant case arises. Petitioners' argument herein is that in computing income in respect of a deceased partner, section 691 is limited in its application by section 691 (f)[10] to only those 1444 transactions covered by sections 736[11] and 753; [12] and that sections 736 and 753 are inapplicable to the facts of the instant case because the buy-sell agreement was between the partners individually (and the payments therefore were not "liquidating" payments). Petitioners thus conclude that section 691 is inapplicable, *30 and that it follows that the basis of the partnership interest, computed under section 1014(a), is its fair market value without reduction for "Income in Respect of Decedents" (IRD). We disagree. *31 Preliminarily, we note that the application of section 691 is not circumscribed in section 691(f) by the reference to section 753, and through that section to section 736(a). Rather, we view these latter sections as supplementary. Nowhere in Part II of Subchapter J (Income in Respect of Decedents) is there language placing restrictions on the application of section 691 to Subchapter K (Partners and Partnerships). Nor is there limiting language in Subchapter K. We do not rest, however, on this point. Section 61, states that "gross income means all income from whatever source derived" and, therefore, in computing IRD, no distinction can be made as to whether the payments come from a partnership or from an individual. The only question to be considered is whether in fact there is gross income which may properly be considered as IRD. In the instant case we find and hold that to the extent payments were allocable to unrealized receivables, said payments constituted IRD. Cf. Estate of Edgar V. O'Daniel, 10 T.C. 631, 633 (1948), affd. 173 F. 2d 966 (C.A. 2, 1949). *32 The Woodhall Brothers' partnership was conducted on a cash basis method of accounting. This of course means that income is not realized from sales on account until collections are received. The accrual basis of accounting attempts to match revenues with expenses in the period earned or incurred. Thus, the accrual basis taxpayer will realize income when sales are made, albeit not necessarily collected. Finney and Miller, Principles of Accounting, Intermediate, 10, 11 (5th ed. 1959). In the instant case the buy-sell agreement between Lyle and his brother provide that receivables due the partnership were to be included in computing the purchase price. Therefore both the estate and the surviving spouse of the first to die would receive income not yet realized by the partnership because of its cash basis method of accounting. Cf. Helvering v. Enright, 312 U.S. 636 (1941). As we view this agreement, we believe that the termination, and the manner of computing the purchase price, was nothing more than the relinquishment of the right to future participation in income earned but not yet realized, in return for a present payment. Cf. Hort v. Commissioner, 313 U.S. 28 (1941); *33 Tunnell v. United States, 259 F. 2d 916 (C.A. 3, 1958). See also James Wesley McAfee, 9 T.C. 720 (1947). Accordingly, we find and hold that the basis of the partnership interest to petitioner individually and as executor is (under section 742, section 1014 and the regulations thereunder) the fair market value at the date of death increased by the successors' shares of liabilities and reduced by IRD. 1445 See section 1.742-1, Income Tax Regs. Thus, in the instant case the fair market value of the interest (contended for by petitioners and not disputed by respondent) would be $41,257.66. One-half of the liabilities, $18,727.67, would be added to the $41,257.66, resulting in $59,985.33. From this amount one-half of the accounts receivable, $45,284.03, would be deducted as IRD leaving a total basis of $14,701.30 to be split $7,350.65 to Chrissie and a like amount to the estate. See section 1.742-1, Income Tax Regs. (1956). The amount of gain would be computed in the following manner: First, the $41,257.66 to be paid and onehalf of the liabilities to be assumed (per the agreement) of $18,727.67 *34 would be added to arrive at the gross sales price $59,985.33. One-half of this amount, $29,992.67, would be attributable to petitioner individually and the other half to the estate. From these amounts the bases of $7,350.65 would be subtracted, leaving gains of $22,642.02. The character of the gain is to be determined under section 741, except as otherwise provided in section 751. Section 741 provides that gain or loss from the sale or exchange of an interest in a partnership is to be treated as gain or loss from the sale or exchange of a capital asset. Section 751, however, is applicable herein, for that section states that money or other property, received for all or part of a partnership interest, shall be considered as an amount realized from the sale or exchange of property other than a capital asset to the extent that it is attributable to unrealized receivables. Since in the instant case Chrissie's shares and the estate's shares of the accounts receivable would be $22,642.02 (one-half $45,284.03), the total gain would be treated as realized from the sale or exchange of property *35 other than a capital asset. [13]
One final point remains, i.e., petitioners' purported elections under section 732(d) on both the individual and fiduciary income tax returns. We find petitioners' purported elections inconsistent and inapplicable to the facts of the instant case. Section 732(d) speaks in terms of distributions of property and provides for an increase in basis to a "partner" who acquires an interest. In the instant case the partnership terminated (by agreement) on the death of Lyle and no property was in fact distributed. Furthermore, paragraph 2 of the buy-sell agreement provided that the surviving partner was to become "the owner of and entitled to possession of all of the property of the partnership." Thus, the estate and surviving spouse had only a contractually created right to receive payment for the decedent's share of the accrued profits (as reflected in the accounts receivable) *36 and the value of partnership assets. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
*. Should be $41,257.66↩
2. See Estate of Harry E.R. Hall, 38 B.T.A. 1145 (1938). See also Rev. Rul. 59-220, 1959-1 C.B. 210↩.
3. SEC. 732. BASIS OF DISTRIBUTED PROPERTY OTHER THAN MONEY. * * * (d) Special Partnership Basis to Transferee. - For purposes of subsections (a) [Distributions Other Than in Liquidation of a Partner's Interest. * * *], (b) [Distributions in Liquidation. * * *], and (c) [Allocation of Basis. * * *], a partner who acquired all or a part of his interest by a transfer with respect to which the election provided in section 754 is not in effect, and to whom a distribution of property (other than money) is made with respect to the transferred interest within 2 years after such transfer, may elect, under regulations prescribed by the Secretary or his delegate, to treat as the adjusted partnership basis of such property the adjusted basis such property would have if the adjustment provided in section 743(b)↩ were in effect with respect to the partnership property. The Secretary or his delegate may by regulations require the application of this subsection in the case of a distribution to a transferee partner, whether or not made within 2 years after the transfer, if at the time of the transfer the fair market value of the partnership property (other than money) exceeded 110 percent of its adjusted basis to the partnership.
*. Should be $45,284.03. ↩
**. Should be $55,021.17.↩
*. Should be $45,284.03 ↩
**. Should be $55,021.17↩
4. SEC. 742. BASIS OF TRANSFEREE PARTNER'S INTEREST. The basis of an interest in a partnership acquired other than by contribution shall be determined under part II of subchapter O (sec. 1011↩ and following). 5. SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall * * * be the fair market value of the property at the date of the decedent's death * * *. (b) Property Acquired From the Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent: * * * (6) * * * property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State * * * if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) * * * ↩
6. The general scheme of section 691↩ is to include in the gross income of the taxpayer (who has acquired the right to receive them from a decedent) the items of gross income in respect of such decedent which were not properly includable in any taxable period of his prior to his death.
7. SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751↩ (relating to unrealized receivables and inventory items which have appreciated substantially in value). 8. This broad interpretation of section 741 is supported by the legislative history. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 70-71 (1954), reads in pertinent part: D. Transfer of an interest in a partnership (secs. 741-743, 751) (1) General rules. - Under present decisions the sale of a partnership interest is generally considered to be a sale of a capital asset, and any gain or loss realized is treated as capital gain or loss. It is not clear whether the sale of an interest whose value is attributable to uncollected rights to income gives rise to capital gain or ordinary income. * * * Because of the confusion in this area, basic rules have been set forth in order to clarify tax treatment and at the same time to prevent the use of the sale of an interest in a partnership as a device for converting rights to income into capital gain. * * * (2) Unrealized receivables or fees * * * In order to prevent the conversion of potential ordinary income into capital gain by virtue of transfers of partnership interests, certain rules have been adopted by your committee which which will apply to all dispositions of partnership interests. * * * * * * A decedent partner's share of unrealized receivables and fees will be treated as income in respect of a decedent. Such rights to income will be taxed to the estate or heirs when collected * * * The term "unrealized receivables or fees" is used to apply to any rights to income which have not been included in gross income under the method of accounting employed by the partnership. The provision is applicable mainly to cash basis partnerships which have acquired a contractual or other legal right to income for goods or services. * * * The sale of a partnership interest or distributions to partners should not be permitted to change the character of this income. The statutory treatment proposed, in general, regards the income rights as severable from the partnership interest and as subject to the same tax consequences which would be accorded an individual entrepreneur. And S. Rept. No. 1622, to accompany H. R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 396 (1954), reads in pertinent part: SUBPART C - TRANSFERS OF INTERESTS IN A PARTNERSHIP Section 741. Recognition and character of gain or loss on sale or exchange Except for technical amendments, this section corresponds to the House provision. It provides that the sale or exchange by a partner of his interest in the partnership shall be treated generally as the sale or exchange of a capital asset. Any gain or loss shall be treated as capital gain or loss unless the partnership has unrealized receivables. * * *↩
9. SEC. 1014 * * * (c) Property Representing Income in Respect of a Decedent. - This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691↩.
10. SEC. 691 * * * (f) Cross Reference. - For application of this section to income in respect of a deceased partner, see section 753↩. 11. SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR INTEREST. (a) Payments Considered as Distributive Share or Guaranteed Payment. - Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered - (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership. (b) Payments for Interest in Partnership. - (1) General Rule. - Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a). (2) Special Rules. - For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for - (A) unrealized receivables of the partnership (as defined in section 751(c)), or (B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will. ↩
12. SEC. 753. PARTNER RECEIVING INCOME IN RESPECT OF DECEDENT. The amount includible in the gross income of a successor in interest of a deceased partner under section 736(a) shall be considered income in respect of a decedent under section 691↩.
13. As a result of the above, approximately 82.30 percent of the amount received by both Chrissie and the estate will be taxable as ordinary income. The 82.30 percent is arrived at by dividing $45,284.03, the amount of the receivables, by $55,021.17, the total amount to be received.↩