DAVID B. SLOAN, JR. and EMILY R. SLOAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; FREDERICK C. BUTLER, JR. and ANN B. BUTLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sloan v. Commissioner
Docket Nos. 7765-79, 7841-79.
United States Tax Court
T.C. Memo 1981-641; 1981 Tax Ct. Memo LEXIS 102; 42 T.C.M. (CCH) 1606; T.C.M. (RIA) 81641; November 2, 1981. *102 Held, payments made by two partners to a third partner as "retirement pay" pursuant to the partnership termination agreement were payments in liquidation of the third partner's partnership interest under sec. 736, I.R.C. 1954, and not payments to purchase the third partner's interest under sec. 741. Held further, such payments would have been guaranteed payments under sec. 736(a)(2) if made by the partnership and hence were deductible business expenses (sec. 162(a)) when made by the two partners in satisfaction of the terminated partnership's obligation. Cyrus D. Hogue, Jr. and W. Talmage Jones, for the petitioners. J. Mack Karesh, for the respondent. NIMS
MEMORANDUM OPINION NIMS, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' federal income taxes: Docket No.
Petitioner
Year
Deficiency
7765-79
David B. Sloan, Jr.
and Emily R. Sloan
1975
$ 6,929.81
1976
3,980.80
7841-79
Frederick C. Butler, Jr.
and Ann B. Butler
1975
6,000.00
1976
3,005.32
The sole issue for decision is the deductibility of certain payments made by petitioners to Dr. Raymond F. Grove subsequent to the termination of their three-man partnership on January 1, 1975. All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. At the time of the filing of their petition, David B. Sloan, Jr. (hereinafter Sloan) and Emily R. Sloan, husband and wife, resided at Wilmington, North Carolina. They timely filed joint income tax returns for the taxable years 1975 and 1976 with the Internal Revenue Service at Memphis, Tennessee. *106 At the time of the filing of their petition, Frederick C. Butler, Jr. (hereinafter Butler) and Ann B. Butler, husband and wife, resided at Wilmington, North Carolina. They timely filed joint income tax returns for the taxable years 1975 and 1976 with the Internal Revenue Service at Memphis, Tennessee. Petitioners Sloan and Butler are licensed medical doctors, specializing in ophthalmology. On October 28, 1970, Sloan and Butler, together with Raymond F. Grove (hereinafter Grove), also an ophthalmologist, formed a partnership, New Hanover Ophthalmology Associates. The partnership agreement provided in relevant part: 19. In the event that a partner dies while this Agreement remains in force, the surviving partners shall pay to the estate of the decedent the following amounts, viz: the equity in the capital account of the decedent as of the end of the calendar year preceding the death, plus a sum of money equal to one-twelfth (1/12) of the gross annual income during the twelve months next preceding his death. (Provided that the said preceding year was a normal, three partner, full-time participation year, and if not, then the average would be based upon the average monthly *107 gross income for the nearest full-time six month period next preceding the death). Such amount, at the election of the surviving partners, may be paid in a lump sum or over a period of twelve months, or less, to the estate of such deceased partner. The benefits herein provided for shall be all of the benefits to which the estate of a deceased partner shall be entitled under this Agreement. 21. If a partner desires to retire from the practice of medicine and surgery, leaving the practice to be continued by the other partners, he shall give sixty (60) days notice of retirement, and as of the date of retirement shall be paid the lump sum provided for in the manner provided for in Clause 19 above, subject to the same election of method of payment by the remaining partners as given in Clause 19. However, retirement as used in this paragraph shall mean total retirement from the field of ophthalmology and a partner electing to retire and receiving the benefits hereunder shall be liable to, and shall pay, each of the other partners the sum of $ 10,000.00, in cash, as liquidated damages for breach of contract if he returns to practice within the State of North Carolina. 26. All of *108 the partners must agree to any amendment or alteration of this Agreement or any Clause (in writing) thereof in any way at any time, or may declare that this agreement is altogether terminated and made ineffective and the partnership dissolved as of any date. In the event of such dissolution none of the provisions hereof respecting retirement, disability or death shall apply, and disposition of assets and receivables shall be made according to the books and records of the partnership, and the respective net equities of the partners. The premises in which New Hanover Ophthalmology Associates was located were owned by Ophthalmologists Realty Corporation. The stock in this corporation was owned equally by Sloan, Butler, and Grove at the time of its incorporation. At some point, presumably in 1975, [1] Grove's stock in this corporation was purchased by James Sloan. During the year 1974, differences arose between Sloan, Butler, and Grove concerning their working relationship in the practice of medicine. These disagreements resulted *109 in a decision by Sloan, Butler, and Grove to terminate the partnership. On December 31, 1974, the partnership was terminated pursuant to a partnership termination agreement signed by each of the partners. The partnership termination agreement provided, inter alia, 1. That the partnership previously existing between the partners under the name of New Hanover Ophthalmology Associates has been and is terminated as of 12 Midnight December 31, 1974. From and after that date each of the parties hereto shall be free to practice medicine at any time in any place and there shall be no further obligation between the parties under the said partnership agreement, except as expressed herein. 2. The parties have heretofore terminated the lease agreement between the former partnership and Opthalmologists' Realty Corporation effective January 31, 1975. It is agreed that the parties hereto shall continue to occupy the building owned by ophthalmology Realty Company (sic) from and after February 1, 1975, pursuant to and in accordance with the minutes of a board of directors' meeting of Ophthalmologists' Realty Corporation held January 13, 1975, a copy of said minutes being attached hereto *110 and by reference made a part hereof. Grove, for himself, his successors and assigns does agree that on or prior to December 31, 1975, he will vacate the offices in the building of Ophthalmologists' Realty Corporation and no longer occupy said premises. Sloan and Butler agree that should Grove vacate the said offices prior to December 31, 1975, that his lease will be cancelled at that time and that they will jointly assume any obligation of Grove to pay rental to Ophthalmologists' Realty Corporation for any months during the year 1975, that he does not occupy the premises. 3. In the occupancy of the building from and after January 1, 1975, the medical practices of the parties hereto shall be completely separate and independent and no party hereto shall be liable for or in any way connected with the practice of the other except as may be set forth in a partnership agreement between Sloan and Butler to which agreement Grove is not a party. Grove agrees that his employees will be employed and paid separately, and Sloan and Butler agree that their employees will be employed and paid separately. * * * 4. With respect to the division of the assets and equities of the partners it *111 is agreed as follows: a. That all of the receivables of the partnership shall be collected and placed in a joint bank account subject to the signature of all three parties hereto. That from said bank account shall be paid all liabilities of the partnership and the net receivables shall be divided between the partners one-third to each. There shall be no distribution to the partners until all accounts are paid or provided for. If there are no major expenses due the parties shall make monthly distributions from this account. b. The accountant for the company shall determine each partner's equity in his capital account and in the determination thereof the net depreciated book value of the fixed assets of the partnership shall be determined as of December 31, 1974. In payment of Grove's equity, Sloan and Butler agree that they will pay his equity in cash or, at his option, he can take fixed assets at net book value in payment thereof. * * * c. Grove shall further be entitled to remove from the building any personal property owned by him which he has used in the practice of medicine. All other property not transferred to Grove hereunder shall be and remain the property of *112 Sloan and Butler in accordance with their respective interests in the partnership. 5. In consideration for his past service to the partnership, and in settlement of certain disagreements which have arisen between the parties with respect to the retirement of Dr. Grove, Drs. Butler and Sloan agree that effective January 1, 1975, they will pay or cause to be paid to Dr. Grove the sum of $ 2,000 per month as retirement pay for a period of eighteen (18) months said obligation terminating upon the making of a payment June 1, 1976. It is further agreed that the obligation for said payment shall be One Thousand ($ 1,000) Dollars per month for Sloan and One Thousand ($ 1,000) Dollars per month for Butler and that neither Sloan nor Butler shall be obligated to pay Grove the other's proportionate part thereof. It is further agreed that Grove shall be under no restriction or limitation with respect to the practice of medicine and shall be fully authorized and empowered to practice medicine at any time in any place, other than the present building after January 1, 1976, without any restriction as set forth in the partnership agreement dated October 28, 1970. Drs. Butler and Sloan do further *113 waive for themselves, their heirs and assigns any right to receive the Ten Thousand ($ 10,000) Dollars payment from Dr. Grove set forth in the partnership agreement dated the 28th day of October 1970. Payments hereunder shall enure only to the benefit of Dr. Grove and his heirs and shall not be assignable or transferable by him. In the event that Grove has not moved from the present building on or before December 31, 1975, he shall forfeit any payments due for subsequent months during which time he occupies said building. 6. Each of the parties hereto agrees that each of the parties shall be entitled to receive charts with folders numbered and coded; with respect to the patients whom he has treated. * * * After December 31, 1974, Grove continued to practice ophthalmology as a sole practitioner, first in the building owned by Ophthalmologists' Realty Corporation, and, after September 1, 1975, in offices in a nearby shopping center. Grove died in 1979. At the time of the partnership termination, Grove was 67 years of age; Sloan and Butler were both under 40. Had Grove retired under the original partnership agreement on January 1, 1975, pursuant to paragraph 21 of that agreement *114 he would have been entitled to receive $ 39,580.50 as retirement pay. On January 1, 1975, Sloan and Butler, together with James Sloan, formed a new partnership for the practice of ophthalmology. This new partnership was separate and distinct from New Hanover Ophthalmology Associates, and it did not assume any of the obligations of Sloan or Butler under the partnership termination agreement of New Hanover Ophthalmology Associates. Pursuant to the partnership termination agreement, a final distribution of accounts receivable collected in 1975, less deductible expenses, was made in equal amounts to Sloan, Butler, and Grove. The amounts distributed in 1975 totaled $ 6,816.22 each for Sloan, Butler, and Grove, which amounts each duly reported as ordinary income on his respective Form 1040 for that year. The remaining assets of the New Hanover Ophthalmology Associates partnership were divided equally among Sloan, Butler, and Grove in 1975, with each receiving one-third of the fixed assets in kind and with Grove taking all of the patient files of the patients he had treated. Grove took 9,268 of the 29,299 patient files which were in the partnership, or 31.6 percent of the patient files. *115 During the course of 1975 and 1976, Sloan and Butler paid Grove $ 1,000 per month for 18 months pursuant to paragraph five of the partnership termination agreement. Sloan and Butler deducted these payments on their respective Forms 1040 in those years. Grove reported the payments he received from Sloan and Butler under paragraph five in 1975 and 1976 as retirement pay, ordinary income. Respondent has disallowed the deductions taken by Sloan and Butler for the payments under paragraph five of the termination agreement. Respondent asserts that these payments were capital in nature; that they were made for the purchase of Grove's partnership interest within the meaning of section 741[2] and thus are not deductible. *116 Petitioners, on the other hand, claim that these payments were guaranteed payments (sec. 707(c)) made in liquidation of a retiring partner's interest within the meaning of section 736, [3] and hence deductible to the partnership and, derivatively, deductible to petitioners individually. *117 The deductibility of payments made by continuing partners to a withdrawing partner is far from a novel issue in this Court. See, e.g., Coven v. Commissioner, 66 T.C. 295 (1976); Cooney v. Commissioner, 65 T.C. 101 (1975); Stilwell v. Commissioner, 46 T.C. 247 (1966); Foxman v. Commissioner, 41 T.C. 535 (1964), affd. 352 F.2d 466 (3d Cir. 1965); Phillips v. Commissioner, 40 T.C. 157 (1963). The rules themselves are well settled. The volume of litigation still occurring in this area is, we think, more a testimony to the inadequacy of parties' tax planning than any obscurity in the law. When Congress drafted the present partnership provisions of the Code in 1954, it sought to allow partners great flexibility in structuring their transactions for tax purposes. H. Rept. No. 1337, 83d Cong., 2d Sess. 65 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess. 89 (1954). As we noted in Foxman (41 T.C. at 551-552): * * * this policy of "flexibility" is particularly pertinent in determining the tax consequences of the withdrawal of a partner. Where the practical differences between *118 a "sale" and a "liquidation" are, at most, slight, if they exist at all, and where the tax consequences to the partners can vary greatly, it is in accord with the purpose of the statutory provisions to allow the partners themselves, through arm's-length negotiations, to determine whether to take the "sale" route or the "liquidation" route, thereby allocating the tax burden among themselves. Thus, if the remaining partners agree to "purchase" in proportion to their partnership interests the partnership interest of the withdrawing partner, section 741 applies, the purchase is a purchase of a capital asset, and the remaining partners are entitled to no deductions against partnership income. Additionally, the withdrawing partner who has "sold" his interest under section 741 has sold a capital asset and, as a general rule, will recognize only capital gain (or loss) on his sale. Cf. sec. 751(a). On the other hand, if the remaining partners choose to "liquidate" the withdrawing partner's interest, section 736 applies. Depending on the nature of the liquidating payments made, the application of section 736 may result in deductibility to the partnership of all or part of the payments. *119 The flip side of deductibility to the partnership of section 736 payments is recognition by the retiring partner of ordinary income in the same amount. How then do we distinguish between a sale of the retiring partner's interest or a liquidation of that interest when in substance there is little or no distinction? How do we choose between Tweedledum and Tweedledee ( Foxman, 41 T.C. at 550)? Before stating and applying the various tests, we note briefly that for purposes of sections 736 and 741 both parties have treated the partnership as a continuing entity subsequent to January 1, 1975. The partnership affairs were not wound up until later in that year. This treatment seems consistent with section 1.708-1(b)(1)(i), Income Tax Regulations, and case law indicating that while a partnership may agree to dissolve on a particular date, for tax purposes it does not "terminate" within the meaning of section 708 until it has ceased conducting all business and financial operations and is completely wound up. [4]Baker Commodities, Inc. v. Commissioner, 415 F.2d 519 (9th Cir. 1969), affg. 48 T.C. 374 (1967), cert. denied 397 U.S. 988 (1970); *120 Foxman, 41 T.C. at 556-557; Kinney v. United States, 228 F.Supp. 656, 663-664 (W.D. La. 1964), affd. per curiam 358 F.2d 738 (5th Cir. 1966). Thus we accept the parties' characterization of the events of January 1, 1975 and thereafter as either a retirement (sec. 736) followed by the termination of the partnership (petitioners' contention) or a sale followed by the termination of the partnership (respondent's contention). What then are the tests to be applied in determining whether Dr. Grove sold his interest to petitioners or retired from the partnership prior to the termination of the partnership? The first factor to consider is the form of the transaction as set up by the parties. This entails both an examination of the language used by the partners in the partnership termination agreement and the underlying liabilities for the payments promised to Dr. Grove in the agreement. Foxman, 41 T.C. at 552-553. As to the language *121 of the termination agreement, it seems clearly to indicate that the disposition of Dr. Grove's interest was to be by way of liquidation and retirement, not purchase and sale. "There is not a single phrase which usually accompanies a sale, such as 'does hereby transfer, set over, bargain, sell, assign and convey.'" Stilwell, supra at 250. On the contrary, the first sentence of paragraph five of the terminaton agreement provides: "In consideration for his past service to the partnership, and in settlement of certain disagreements which have arisen between the parties with respect to the retirement of Dr. Grove, Drs. Butler and Sloan agree that effective January 1, 1975, they will pay or cause to be paid to Dr. Grove the sum of $ 2,000 per month as retirement pay * * *." [Emphasis supplied.] Similarly, the agreement provides for no "lump-sum" consideration for Dr. Grove's partnership interest, Beavers v. Commissioner, 31 T.C. 336, 339 (1958), but rather for a physical division of one-third of the assets, one-third of the accounts receivable, roughly one-third of the patient files, and an amount of money ($ 36,000), termed "retirement *122 pay," which roughly approximated the amount of money Grove would have been entitled to receive ($ 39,580.50) had he retired under the original partnership agreement. This factor, too, is more indicative of a liquidation in retirement than a sale. The second component of the form test is: Is the obligation to pay the withdrawing partner under the agreement an obligation of the partnership or an obligation of the remaining partners in their individual capacities? Coven, supra at 305-306; Foxman, 41 T.C. at 553. If the obligation is expressed as the individual liability of the remaining partners a sale is indicated. Coven, supra at 305. It appears from the termination agreement that petitioners individually assumed the obligation to pay Dr. Grove the $ 36,000 of "retirement pay." Nowhere in the document does New Hanover Ophthalmology Associates agree to make such payments. Petitioners argue that they merely assumed the existing obligation of the partnership when they individually obligated themselves to pay Dr. Grove's "retirement pay" - that the partnership at that time could not have assumed such payments to Dr. Grove *123 because it no longer existed. Consequently, they argue, individual liability in this case is no indication that a sale took place. We might have found more merit to petitioners' argument had they not included in the second sentence in paragraph five of the termination agreement: "It is further agreed that the obligation for said payment shall be One Thousand ($ 1,000) Dollars per month for Sloan and One Thousand ($ 1,000) Dollars per month for Butler and that neither Sloan nor Butler shall be obligated to pay Grove the other's proportionate part thereof." This disclaimer of liability for payment of the other partner's share of the "retirement pay" to Dr. Grove seems inconsistent with the argument that a partnership obligation was assumed. Partners are ordinarily jointly and severally liable for unsatisfied debts of a partnership. We find the disclaimer of such joint liability to be evidence in favor of respondent's position that the $ 36,000 in payments were actually for the purpose of purchasing Dr. Grove's partnership interest, one-half being brought by Dr. Sloan and one-half being bought by Dr. Butler. On the whole, then, the form test seems to give conflicting signals when *124 applied in this case. The language of the termination agreement indicates a liquidation occurred; the liabilities assumed individually by the petitioners indicate a sale. A second test used to tell whether a withdrawing partner's interest was sold or liquidated is to examine the circumstances surrounding the agreement and the negotiations preceding the withdrawal. Miller v. United States, 181 Ct. Cl. 331 (1967); Foxman, 41 T.C. at 553. Unfortunately, the record in this case presents no information regarding whether Dr. Grove desired to sell or retire his partnership interest or how the negotiations proceeded. Thus, this test is of little use here. A third test is to ascertain the intent of the parties independently of the language or form of the agreement involved. We believe this test to be the decisive factor here. Often cases involving the issue of sale or liquidation come before the courts with one party to the transaction (the withdrawing partner) claiming a sale occurred and the other parties (the remaining partners) claiming a liquidation. The Commissioner is whipsawed. To protect the revenue, he determines deficiencies against all *125 parties involved and leaves it to the courts to divine what actually happened. See, e.g., Karan v. Commissioner, 319 F.2d 303 (7th Cir. 1963), affg. a Memorandum Opinion of this Court; Miller, supra, and the other side of the same transaction in Phillips, supra; Foxman, supra.Faced with this inconsistent reporting of the identical transaction, courts have a difficult time deciding what the parties really intended at the time the agreements were entered into. We have no such difficulty here. This is not a case where the parties have put inconsistent interpretations on the same transaction. At all times Dr. Grove has treated the receipt of his "retirement pay" as the receipt of ordinary income. Petitioners have agreed with this interpretation, and, under section 736, have deducted such payments to Dr. Grove on their individual returns. Loss of revenue from inconsistent positions is not involved here. Thus we conclude that the manifest intent of the parties at the time the termination agreement was signed was that Dr. Grove's partnership interest was to be liquidated within the meaning of section *126 736. While we are still not without some doubt as to the true nature of the payments to Dr. Grove, we find that, given the application of the above tests to the facts and circumstances of the partnership termination agreement, on the whole the payments made pursuant to paragraph five thereof should be treated for tax purposes as section 736 paymets in liquidation of a retiring partner's interest. Accordingly, we view the events of January 1, 1975 as a liquidation of Dr. Grove's interest in New Hanover Ophthalmology Associates in return for one-third of the accounts receivable, one-third of the physical assets, Dr. Grove's patient files, and $ 36,000 of retirement pay for past services rendered. Under this view of the facts, retirement payments then clearly became guaranteed payments under section 736(a)(2) and would have been deductible to the partnership had it not a moment thereafter ceased to exist. Petitioners, having satisfied the obligation of the partnership to Dr. Grove for these payments, are entitled to trade or business expense deductions under section 162(a) in the years the payments were made. Flood v. United States, 133 F.2d 173 (1st Cir. 1943). *127 Cf. Rev. Rul. 75-154, 1975-1 C.B. 186. Accordingly, Decisions will be entered for the petitioners. Footnotes
1. The stipulation of facts is silent as to this date, but we assume James Sloan acquired Grove's stock shortly after the partnership terminated.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect during the years in question. Section 741 provides as follows: SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).↩
3. SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.
(a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GRANTEED PAYMENT.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered-- (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership. (b) PAYMENTS FOR INTEREST IN PARTNERSHIP.-- (1) GENERAL RULE.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a). (2) SPECIAL RULES.--For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for-- (A) unrealized receivables of the partnership (as defined in section 751(c)), or (B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will. (c) CROSS REFERENCE.--For limitation on the tax attributable to certain gain connected with section 1248 stock, see section 751(e). Section 707(c), made applicable by section 736(a)(2), supra, provides as follows: SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP. (c) GUARANTEED PAYMENTS.--To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses). "Liguidation" of a partner's interest is defined in section 761(d) as follows: SEC. 761. TERMS DEFINED. (d) LIQUIDATION OF A PARTNER'S INTEREST.--For purposes of this subchapter, the term "liquidation of a partner's interest" means the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership.↩
4. Accordingly, in our view, the use of the word "terminated" in paragraph one of the partnership termination agreement amounts essentially to a legal solecism, at least for tax purposes.↩